126 F.3d 1220
 97 Cal. Daily Op. Serv. 7885, 97 Daily Journal
D.A.R. 12,685
UNITED MEXICAN STATES; Miguel Angel Gonzalez, Legal Advisor
of Secretary of Foreign Relations of Mexico; Loui
Cabrera, Counsel General of Mexico in
the State of Arizona,
Plaintiffs-Appellants,
v.
Grant WOODS, Attorney General; Terry L. Stewart, Director
of the Arizona Department of Corrections; Meg
Savage, Warden, Arizona State Prison,
Florence, Arizona, Defendants-Appellees.
 No. 97-15878.
 United States Court of Appeals,
Ninth Circuit.
 Submitted June 3, 1997.*
Decided Oct. 7, 1997.
 
 John P. Frank, Lewis and Roca, Phoenix, Arizona, for plaintiffs-appellants.
 Jon G. Anderson, Assistant Attorney General, Phoenix, Arizona, for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona; Stephen M. McNamee, District Judge, Presiding. D.C. No. CV-97-01075.
 Before: D.W. NELSON, LEAVY, and T.G. NELSON, Circuit Judges.
 T.G. NELSON, Circuit Judge:
 
 
 1
 The United Mexican States and two of its officials appeal the district court's dismissal of their action against Arizona's Attorney General and two officers of the Arizona Department of Corrections. The district court held that it lacked jurisdiction under the Eleventh Amendment to the Constitution of the United States. We agree and affirm the dismissal.
 
 BACKGROUND
 
 2
 Ramon Martinez-Villareal, a citizen of Mexico, was convicted of the capital murders of Jim McGrew and Fernando Estrada. His convictions and death sentences were upheld in 1985. State v. Martinez-Villareal, 145 Ariz. 441, 702 P.2d 670 (1985). This court denied relief on the appeal of his federal habeas petition in 1996. Martinez-Villareal v. Lewis, 80 F.3d 1301 (9th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996).
 
 
 3
 Martinez-Villareal's execution was scheduled for April 1997, and later postponed to May 22. On May 16, the United Mexican States, the Legal Adviser of the Secretary of Foreign Relations and the Consul General of the State of Mexico in the State of Arizona (collectively "Mexico") filed suit in district court. It contended that the execution of Martinez-Villareal would violate three treaties and customary international law. The Consul General also sought relief under 28 U.S.C. § 1983. Mexico sought a temporary restraining order and a preliminary injunction. The district court dismissed the complaint and the requests for a temporary restraining order and preliminary injunction. Mexico has appealed to this court and seeks an injunction pending appeal.
 
 DISCUSSION
 
 4
 The Eleventh Amendment to the Constitution of the United States provides:
 
 
 5
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 6
 Although the amendment does not by its terms refer to the immunity of states from suits by foreign nations, it is now well established that the amendment does immunize the states from such suits.
 
 
 7
 Monaco v. Mississippi, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934), involved a request by the Principality of Monaco for leave to sue the State of Mississippi in the Supreme Court upon bonds issued by Mississippi. The court noted the lack of reference in the amendment to suits by foreign nations. Id. at 321, 54 S.Ct. at 747. However, it held that the immunity applied to such cases, saying
 
 
 8
 The foreign State lies outside the structure of the Union. The waiver or consent, on the part of a State, which inheres in the acceptance of the constitutional plan, runs to the other States who have likewise accepted that plan, and to the United States as the sovereign which the Constitution creates. We perceive no ground upon which it can be said that any waiver or consent by a State of the Union has run in favor of a foreign State. As to suits brought by a foreign State, we think that the States of the Union retain the same immunity that they enjoy with respect to suits by individuals whether citizens of the United States or citizens or subjects of a foreign State. The foreign State enjoys a similar sovereign immunity and without her consent may not be sued by a State of the Union.
 
 
 9
 Id. at 330, 54 S.ct. at 751. See also Blatchford v. Native Village of Noatak, 501 U.S. 775, 782, 111 S.Ct. 2578, 2582, 115 L.Ed.2d 686 (1991) ("What makes the States' surrender of immunity from suit by sister States plausible is the mutuality of that concession. There is no such mutuality with either foreign sovereigns or Indian tribes.") Thus, it is clear that Mexico may not sue the State of Arizona in federal court absent its consent, which it has not given.
 
 
 10
 Mexico argues that its suit is against state officials, not the State itself, and therefore not within the State's Eleventh Amendment immunity. This argument is untenable in the face of Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), which stated that "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." Id. at 101, 104 S.Ct. at 908 (quoting Hawaii v. Gordon, 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963)).
 
 
 11
 In this case, it is the State of Arizona which has prosecuted Martinez-Villareal and sentenced him to death. It is the State which seeks to carry out the sentence. The relief Mexico seeks would operate against the sentence imposed by the State and not against the officials designated by State law to carry out the sentence. See id. at 101-02, 104 S.Ct. at 908-09 ("and as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief").
 
 
 12
 There is an exception to the above rule under Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Under that case, if the suit involves an injunction seeking a prospective remedy for a continuing violation of federal law, a federal court may enjoin state officials from continuing such activity. Idaho v. Coeur d'Alene Tribe of Idaho, --- U.S. ----, ----, 117 S.Ct. 2028, 2034, 138 L.Ed.2d 438 (1997).
 
 
 13
 The specific violations of treaty rights claimed are the failure of Arizona officials to notify Martinez-Villareal of his rights under the Vienna Convention on Consular Relations, 21 U.S.T. 77; their failure to notify Mexican Consular Officials directly of his arrest, as required by Articles I and VI of the Bilateral Consular Convention, 57 Stat. 800; their failure to provide Mexico a meaningful opportunity to assist Martinez-Villareal as required by the two treaties; their failure to ensure that Martinez-Villareal had competent counsel at all stages of the proceedings; and their intent to carry out the death sentence in spite of his mental retardation, apparently contended to be contrary to the International Covenant on Civil and Political Rights (999 U.N.T.S. 171), as well as customary international law.
 
 
 14
 Mexico argues that its treaty-based challenges to the validity of Martinez-Villareal's conviction and sentence can give rise to prospective relief under Ex Parte Young. We reject this argument. A criminal proceeding can be roughly analogized to a series of videotaped scenes: the arrest, the interrogation, the trial, the sentencing, and the appeal. Each of these scenes is examined post hoc in state postconviction proceedings and federal habeas. In no event, however, can the conviction or sentence be considered as a dynamic event, to be examined in a prospective fashion. The facts relating to the analysis of whether the proceedings met constitutional requirements are fixed and must be viewed through a retrospective lens.
 
 
 15
 The same is true of Mexico's argument that Martinez-Villareal is retarded. The Constitution of the United States prohibits the execution of those who cannot understand that they are to be executed and why. Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). See also Martinez-Villareal v. Stewart, 118 F.3d 625 (9th Cir.1997). The Arizona Superior Court held a four-day evidentiary hearing before concluding that Martinez-Villareal was competent to be executed. The Arizona Supreme Court considered a special action petition and denied relief. The question of Martinez-Villareal's competence to be executed has been considered as required by state law. The constitutional adequacy of that consideration is now another scene for retrospective review, based on a fixed set of facts.
 
 
 16
 Mexico has not challenged the validity of the Arizona competency determination scheme, as embodied in ARS § 13-4022. Therefore, no prospective relief is involved in the determination of Martinez-Villareal's competence to be executed. "Young has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past...." Papasan v. Allain, 478 U.S. 265, 277-78, 106 S.Ct. 2932, 2939-40, 92 L.Ed.2d 209 (1986).
 
 
 17
 Mexico's consistent request for a "declaration" that Arizona's past conduct violated the treaties does not convert the action into one for prospective relief. Mexico is faced with the fact that it has received notice and currently has access to Martinez-Villareal. Mexico is not precluded from ensuring that Martinez-Villareal has effective counsel. Mexico makes no allegations in its complaint that Arizona officials intend to ignore or violate the requirements and judgments of the state or federal courts which have jurisdiction in this case. In the absence of a valid claim of a continuing violation of law, both an injunction and a declaratory judgment are rendered unavailable. See Green v. Mansour, 474 U.S. 64, 73, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985) ("We think that these cases demonstrate the impropriety of the issuance of a declaratory judgment in this case. There is no claimed continuing violation of federal law, and therefore no occasion to issue an injunction.").[1]
 
 
 18
 In conclusion, the Eleventh Amendment provides immunity to a state from suit by a foreign government in federal court. The Young exception is inapplicable because Mexico alleges no continuing violations of federal or international law.[2] Therefore, Arizona and its officials are immune from Mexico's suit. The district court was correct in dismissing on that basis.[3]
 
 
 19
 AFFIRMED. The request for injunction pending appeal is DENIED as moot.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 [1]
 There is some question about the extent to which the specific language of the Covenant binds the United States, given the "reservations, understandings and declarations" involved in its ratification by the Senate in 1992. See "The International Covenant on Civil and Political Rights and the Supremacy Clause," 42 DE PAUL L.R. 1287 (1993)
 
 
 [2]
 Mexico also claims that the execution of Martinez-Villareal would violate customary international law because he is retarded. While the United States may not be bound to follow customary international law, see Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 715 (9th Cir.1992), cert. denied, 507 U.S. 1017, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993), the claim of mental retardation is not qualitatively different from the incompetence to be executed analysis already undertaken. Furthermore, we have examined the treaties and see no ongoing obligations which could afford prospective relief under Young. Cf. Murphy v. Netherland, 116 F.3d 97, 100 (4th Cir.1997), cert. denied, stay denied, 1997 WL 562172 (U.S.1997) (a state does not violate a constitutional right merely by violating the provisions of the Vienna Convention)
 
 
 [3]
 The parties briefed the issue of the justiciability of this dispute, at our request. There is a question whether this kind of a dispute concerning the duties of the parties to a treaty is cognizable in federal court:
 A treaty is primarily a compact between independent Nations. It depends for the enforcement of its provisions on the interest and the honor of the governments which are parties to it. If these fail, its infraction becomes the subject of international negotiations and reclamations, so far as the injured party chooses to seek redress, which may in the end be enforced by actual war. It is obvious that with all this, the judicial courts have nothing to do and can give no redress.
 Head Money Cases, 112 U.S. 580, 598, 5 S.Ct. 247, 253, 28 L.Ed. 798 (1884).
 Since we agree with the district court that it had no jurisdiction, we need not consider the justiciability question, and express no opinion on that issue.