**CONSULATE GENERAL OF MEXICO, as an agent and duly authorized representative of the sovereign government of Mexico, Petitioner,**

v.

**The Honorable John L. PHILLIPS, etc., et al., Respondents,**

No. 98–8285–CIV.

United States District Court, S.D. Florida.

May 11, 1998.

Clayton Reed Kaeiser, Miami, FL, for plaintiff.

Joseph A. Tringali, Assistant Attorney General, West Palm Beach, FL, for defendants.

## ORDER

GRAHAM, District Judge.

**THIS CAUSE** came before the Court upon Petitioner's, the Consulate General of Mexico ("Petitioner"), Emergency Petition for Writ of Mandamus and Emergency Motion for

Stay of Proceedings (D.E.1), filed May 5, 1998.

## I. BACKGROUND

Defendant, Sergio Soto, (referred to as the "Defendant" or "Soto"), a Mexican national, was charged in Palm Beach County, Florida with first-degree murder, robbery, attempted robbery, car jacking, kidnapping and armed burglary of an occupied conveyance in 1995. On March 26, 1998, the state jury found Defendant guilty of all the aforementioned.

Prior to trial in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "state court"), Respondent Circuit Court Judge Phillips ("Judge Phillips") entered an Order, dated February 19, 1998, denying a defense motion for appointment of an expert to conduct a Positron Emission Tomography Scan ("PET Scan"). Judge Phillips provided three primary reasons for denying the Defendant's motion: (1) the Defendant failed to provide evidence regarding the necessity and relevancy of the PET Scan for presentation at trial; (2) transporting the Defendant to Jacksonville presented security risks; and (3) the Petitioner presented no evidence suggesting that funds were available to pay for the PET Scan.

The Defense filed a motion in state court for rehearing along with a detailed affidavit from a psychologist who had conducted forensic tests on the Defendant and who had found evidence of brain damage. The affidavit concluded that further testing, including a PET Scan, would be required. On March 2, 1998, Judge Phillips entered an Order denying the Defendant's request for rehearing.

The Petitioner became involved in the case at least a year ago by assisting the Defendant in proceedings in the state court. Petitioner contends that it is entitled to assist Defendant at trial pursuant to Article 36 of the Vienna Convention on Consular Relations of 1963, 21 U.S.T. 77 (the "Vienna Convention") which provides in pertinent part as follows:

1. With a view to facilitating the exercise of consular functions relating to nationals of the sending state:

(b) If he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that state is arrested or committed to prison or custody pending trial or is detained in any other matter ... The said authorities shall inform the person concerned without delay of his right under this subparagraph.

Article 36 requires the State of Florida, upon Defendant's request, to inform the Petitioner that the Defendant has been committed to prison pending trial. The Bilateral Consular Convention of 1943, 57 Stat. 800, T.S. 985 (the "Bilateral Convention") provides that Consular officers shall have the following rights:

2. Consular officers shall, within their respective consular districts, have the right:

(a) to interview and communicate with the nationals of the State which appointed them;

(b) to inquire into any incidents which have occurred affecting the interests of the nationals of the State which appointed them;

(c) upon notification to the appropriate authority, to visit any of the nationals of the State which appointed them who are imprisoned or detained by authorities of the State; and

(d) to assist the nationals of the State which appointed them in proceedings before or relations with authorities of the State.

On Friday March 13, 1998, three days before the trial was scheduled to commence in state court, Petitioner filed a Motion to Continue the Defendant's trial or, in the alternative, to Address the Court. The motion requested that the case be continued for at least 200 days so that the Petitioner could

"fulfill its duty of safeguarding the interest and rights of its nationals," and expressing concern that the trial court had never been apprised of the fact that the Defendant's rights under Article 36 of the Vienna Convention on Consular Relations may have been violated. Petitioner also wanted to insure that the mental health experts had the opportunity to evaluate the Defendant prior to trial.

At the March 13, 1998 hearing on Petitioner's motion to continue, the state court refused to allow the Petitioner to personally address the court, but did hear the Petitioner through counsel. Petitioner's counsel reiterated the Petitioner's request to present the Vienna Convention issue, proffered that the Petitioner was prepared to pay for all expenses relating to PET Scan testing, and further attacked the voluntariness of the Defendant's statements to the police. The state court denied the Motion for Continuance and made a specific finding that the Petitioner did not have standing to make the motion.[1]

The Petitioner sought emergency relief in the Fourth District Court of Appeals for Florida by filing an Emergency Petition for a Writ of Prohibition on Monday, March 16, 1998, but that petition was denied on the same day. On March 18, 1998, Petitioner filed the instant case as an emergency in the U.S. District Court, Southern District of Florida. The case was randomly assigned to the undersigned.

On March 26, 1998, the Defendant was convicted of first-degree murder, robbery, attempted robbery, car jacking, kidnapping and armed burglary of an occupied conveyance.

On April 14, 1998, this Court held a hearing on the Petitioner's Emergency Petition. This Court issued an Order dated April 16, 1998, finding that the issues presented were not ripe for adjudication because they had not been raised by Petitioner in the state court suit. On April 24, 1998, both the Defendant and the Petitioner filed a motion in state court seeking permission to obtain a PET Scan test and to introduce evidence obtained from the test in the sentencing phase. On April 28, 1998, the state court heard argument on the motion and denied the motion. The state court adopted its Order entered on March 13, 1998 and denied Petitioner and Defendant's motion regarding the use of PET Scan evidence for purposes of the sentencing phase. On May 7, the state court proceeded to hear evidence in the sentencing phase and reset the matter for final ruling on Tuesday, May 12, 1998, at 8:00 a.m..

On May 5, 1998, the Petitioner filed its second Emergency Petition for Writ of Mandamus which was assigned case number 98–8285–CIV–HURLEY. On Wednesday May 6, 1998, Judge Hurley conducted a telephonic hearing with counsel for the Petitioner and the Office of the State Attorney General and determined that the case should be transferred to this Court. On Friday, May 8, 1998, this Court accepted transfer of this case.

## II. ANALYSIS

In this case, the Consulate filed suit against the State court Judge and the State Attorney. Petitioner alleges that Mexico's separate rights under the Vienna Convention and the Bilateral Convention, which both require notification, have been violated by the States' failure to inform Soto of his rights under the treaties and to inform the Mexican consulate of Soto's arrest.

### A. Private Right of Action

■ "Treaties of the United States, though the law of the land do not generally create rights that are privately enforceable in

---

1. Judge Phillips stated, "[i]n my opinion, from reviewing the authorities [that were] cited to me and from my review of the motion and everything else that I could put my hands on, both before this hearing and during the recess of this hearing, I am convinced that the Mexican Consulate has no standing to appear in this criminal proceeding." Transcript of Hearing dated March 13, 1998, at p. 29, ln 4.

courts." *Tel–Oren v. Libyan Arab Republic,* 726 F.2d 774, 808 (D.C.Cir.1984). In *Smith v. Socialist People's Libyan Arab Jamahiriya,* 886 F.Supp. 306, 310 (E.D.N.Y.1995), the court held that absent legislation providing an individual right of action, the court may entertain a private claim only if the treaty is self-executing. A treaty is self-executing if it expressly or impliedly provides a private right of action. *Id.*

■ The Court must examine the "intent of the signatory parties as manifested by the language of the instrument, and, if the language is uncertain, recourse must [be determined by examining] the circumstances surrounding its execution." *Diggs v. Richardson,* 555 F.2d 848, 851 (D.C.Cir.1976) (*citing Sei Fujii v. State,* 38 Cal.2d 718, 721–22, 242 P.2d 617, 620 (1952)).

■ The Court finds that the Bilateral Convention is self-executing. The primary purpose of the Bilateral Convention is to set out the duties, rights, privileges, exemptions and immunities of the consular officers of each country in the territory of the other country. Article VI of the Bilateral Convention states in pertinent part as follows:

> Consular officers of either High Contracting Party may, within their respective districts, address the authorities, National, State, Provincial or Municipal, for the purpose of protecting the national of the State by which they were appointed in the enjoyment of rights accruing by treaty or otherwise. Complaint may be made for the infractions of those rights.

The term "authorities" is not specifically defined in Article VI. Article X, the article conferring exclusive jurisdiction on the consul over controversies arising out of the internal order of private vessels of his own country, makes specific reference to police authorities and judicial authorities. Based on a plain reading of Article VI, the Court finds that the parties used the term "authorities" in a general sense that includes both police authorities and judicial authorities. There is no indication that the signatory parties intended to exclude judicial authorities from the term "authorities."

In *Breard v. Greene,* —— U.S. ——, ——, 118 S.Ct. 1352, 1356, 140 L.Ed.2d 529 (1998), the Supreme Court noted that the Vienna Convention does not confer upon a Petitioner a private right of action to set aside a criminal conviction and sentence for violation of consular notification provisions because neither the text nor the history of the Vienna Convention expressly provides such a private right of action. However, the Bilateral Convention does provide such a private right of action.

It is important to note that the private right of action is subject to the procedural rules of the forum state. In *Breard,* the Supreme Court stated that absent a clear and express statement to the contrary, the procedural rules of the forum State govern the implementation of the treaty in that State. *Id.* at ——, 118 S.Ct. at 1353 (citing *Sun Oil Co. v. Wortman,* 486 U.S. 717, 723, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988)). The Supreme Court stated that the rights expressed in the Vienna Convention "shall be exercised in conformity with the laws and regulations of the receiving State, provided that said laws and regulations must enable full effect to be given to the purposes for which the rights accorded under this Article are intended." Article 36(2), [1970] 21 U.S.T., at 101.

## B. Standing

In *Republic of Paraguay v. Allen,* 134 F.3d 622, 626 (4th Cir.1998), the Fourth Circuit appeared to follow the district court's determination that Paraguay and its officials had standing to bring their claims under the Vienna Convention. However, the court was careful to point out that Paraguay was "asserting its own rights and not those of [the defendant]." *Id.* In *Republic of Paraguay v. Allen,* 949 F.Supp. 1269, 1274 (E.D.Va.1996), the district court held that a party has standing if they meet the following requirements: (1) they have suffered an injury; (2) the defendant caused the injury; and (3) the injury is redressable by the Court.

■ The *Allen* court cited *Matta–Balleste-ros v. Henman*, 896 F.2d 255, 259 (7th Cir. 1990), for the proposition that Paraguay had standing to seek redress for violation of the Vienna Convention because treaties are designed to "protect the sovereign interests of nations and it is up to the offended nations to determine whether a violation of sovereign interests occurred and requires redress." This Court agrees with the analysis of standing in *Henman* and *Allen* and finds that the Petitioner has standing to argue that the State of Florida violated the Vienna Convention and that as a result of that violation the Petitioner has been injured. *See United States v. Rosenthal*, 793 F.2d 1214, 1232 (11th Cir.1986) ( [u]nder international law, it is the contracting party that has the right to complain about a violation).

This Court draws a distinction between the Petitioners right to assist the Defendant to obtain the Pet Scan from the Defendant's substantive right to present evidence at a sentencing hearing. Thus, the Petitioner has standing to assert that Florida violated the Vienna Convention and the Bilateral Convention and that as a result of that violation the Petitioner has been injured. *United States v. Rosenthal*, 793 F.2d 1214, 1232 (11th Cir. 1986).

### C. Writ of Mandamus

■ The Petitioner requests that this Court issue an emergency stay of all "lower court" proceedings and enter a Writ of Mandamus. The guidelines that courts consider in determining whether to issue a Writ of Mandamus are as follows: (1) the party seeking the writ has no other adequate means to attain the relief it desires; (2) the petitioner will be prejudiced in a way not correctable on direct appeal unless the relief requested is granted; (3) the order of the State court judge is clearly erroneous as a matter of law or manifests persistent disregard of federal rules; (4) the order of the State court judge raises new and important problems, or issues of law; and (5) petitioner has exhausted all state remedies. *See United States Of America v. Harper*, 729 F.2d 1216, 1221 (9TH Cir.1984).

In applying these factors, the Court finds that Petitioner is not entitled to a Writ of Mandamus. Petitioner has other adequate means of relief because the issues presented to this Court have been preserved in the State court for appeal. Moreover, the Petitioner has not exhausted all its state court remedies. Therefore, the analysis that follows is directed to Petitioners alternate request for relief, the stay of state court proceedings.

### D. Eleventh Amendment

Respondent contends that this Court does not have jurisdiction over a state court criminal proceeding under the doctrine of sovereign immunity. The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State.

On its face the amendment is silent regarding sovereign immunity. However, in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the Supreme Court held that a private person could not assert federal rights against a State in federal court without the State's consent. The principle, "that the States, in the absence of consent, are immune from suits brought against them ... by a foreign State" was enunciated in *Principality of Monaco v. Mississippi*, 292 U.S. 313, 329–30, 54 S.Ct. 745, 78 L.Ed. 1282 (1934). *See also Breard v. Greene*, at ——, 118 S.Ct. at 1356; *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In *Principality of Monaco*, the Court stated:

> The foreign state lies outside of the structure of the Union. The waiver or consent, on the part of the State, which inheres in the acceptance of the constitutional plan, runs to the other States who have likewise accepted that plan, and to the United States as the sovereign which the Constitution creates. We perceive no ground

upon which it can be said that any waiver or consent by a State of the Union has run in favor of a foreign State. As to suits brought by a foreign State, we think that the States of the Union retain the same immunity that they enjoy with respect to suits by individuals whether citizens of the United States or citizens or subjects of a foreign State. The foreign State enjoys a similar sovereign immunity and without her consent may not be sued by a State of the Union.

*Id.* at 330, 54 S.Ct. at 751.[2]

The immunity extends to state officials as well as states if the actions are in fact actions against the state as the real party in interest. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). This action, although brought against Judge Phillips and Barry Krischer, is in fact an action against the State because the relief sought by Petitioner would operate against the sentence imposed by the state and not against officials designated by state law to carry out the sentence. *United Mexican States v. Woods,* 126 F.3d 1220, 1222 (9th Cir.1997). Therefore, the immunity extends to the Respondents. Immunity in actions against state officials is subject to the critical exception established in *Ex–Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

### *E. Ex parte Young*

■ The sole exception to a State's sovereign immunity under the Eleventh Amendment has been in cases of a continuing violation of federal law. In *Ex parte Young,* the Supreme Court held that Federal courts may exercise jurisdiction over claims against State officials by persons at risk of, or suffering from, a violation or violations by that

official if: (1) the violation for which relief is sought is ongoing, and (2) the relief sought is only prospective. *Paraguay,* 134 F.3d at 627. In *Paraguay,* the Court found that a murder conviction and death sentence did not constitute an ongoing violation by the state and that the voiding of a final state conviction and sentence was not prospective relief, but rather retrospective and thus denied jurisdiction. *Id.* at 628; *United Mexican States v. Woods,* 126 F.3d 1220, 1223 (9th Cir.1997).

It is important, however, to distinguish between the Defendant's interest and the Petitioner's interest. The Defendant's interest in the state court proceeding is not limited to those rights set forth in the Vienna Convention. In contrast, the Petitioner's rights are limited to those expressed in the Vienna Convention and the Bilateral Convention. In essence, the Petitioner has the right to notification of the Defendant's confinement and the subsequent right to assist the Defendant.

In *Breard,* the Supreme Court specifically rejected Paraguay's argument that its suit is within "an exemption dealing with continuing consequences of past violations of federal rights because the failure to notify occurred long ago and has no continuing effect." *Id.* at ——, 118 S.Ct. at 1356 (citing *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977)).

The Petitioner attempts to show a continuing violation in two ways. Petitioner argues that Judge Phillips has refused "to grant a forum to the petitioner in which to address the constitutional/treaty issues that petitioner wishes to raise." Thus, the Petitioner contends that the violation is ongoing or continuing in the sense that the consequences remain in Soto's continuation in custody without the benefit of timely counseling that was

---

**2.** Interestingly, Petitioner is quite careful not to waive its own right to sovereign immunity. In its Supplemental Memorandum In Support Of Emergency Petition, the Petitioner states that, "[n]either the filing of this Memorandum, not the argument, discussions, analyses, evaluations, fact gathering, or any other matter related directly or indirectly, or arising out of, or under the privi-

leges, rights, protections of treaty, or any other applicable, including, but not limited to international law, shall be deemed a waiver, either express or implied, by the consulate, nor by the United Mexican States, of any such rights, privileges, protections, immunity, including, but not limited to, those set forth by the Foreign Sovereign Immunities Act."

prevented by the violation. The Court rejects this argument and finds that the Petitioner is requesting retrospective relief. In addition, the Petitioner contends that the violation is continuing because the Petitioner has been precluded from assisting Soto in obtaining evidence of organic brain disorder via the Pet Scan test for use both in the guilt phase and the sentencing phase. However, a review of the state court record indicates that Judge Phillips did allow the Petitioner to assist the Defendant.

At the hearing on Friday March 13, 1998, the following exchange took place:

THE COURT: All right. Thank you. Is there any rebuttal from the Mexican Consulate?

MR. PROBINSKY: Yes, sir. I think it's clear based on the Federal case law that we've cited as well as our brief and our motion that the Consul General does have standing and right to be here to intercede on behalf of Mexican national to protect his rights.

I think we stated clearly, not merely as an observer, but as a participant and has standing here before the Court.

I think the fundamental issues before us are whether this young man, and certainly, this case will be reviewed as the Court points out to the highest level, where this young man has been given the opportunity to have the tests that are necessary to determine his competency and his mental capacity on the issues that Mr. Kaeiser pointed out, not only the voluntariness of the confession but whether he understood what was happening during the alleged offense and also the penalty phase, if we get to stage two in this case.

The Court, in its determination, decided that that wasn't a cost that was required or necessary and we're here on behalf of the Consul General of this state, that we are prepared to take a couple of months to make sure that, as I understand, from speaking with Defense counsel this morning, Mr. Pleasanton, the psychological test

that were recently performed suggest that there is organic brain damage and this can be easily determined by an objective tests.

I haven't seen the report, but I understand that it was requested or suggested in that report, done by Defense psychologist. We think that's essential and necessary to those three aspects of the Defense.

We also think that the Consul General has the right to file a supplemental brief with the Court addressing the issues of the Motion to Suppress the confession. It's my understanding that the Consul's office understood, over the past year that this case would be resolved through a plea agreement and very recently, within the last week or so, it was learned that was otherwise.

He came here to express to the Court that we're concerned about that and we would expect the courts of this Country to offer the same respect and acknowledgments of rights that we would expect the government of Mexico to do to our nationals.

Thank you, Judge.

THE COURT: All right. Thank you.

I'm going to retire and review the Murphy case that's been cited up in support of the Consulate's motion.

The Respondent counters that there is no continuing violation of Mexico's treaty rights, as distinguished from Soto's, because Mexico has notice of Soto's confinement and Mexico has complete access to Soto. Thus, there is no continuing violation of federal law or federal treaty. With respect to the present consequences that remain from Petitioner's lack of timely counseling, the Defendant raised this issue in the state court and thus may raise it in any subsequent federal habeas corpus action. *See Seminole Tribe*, at 177–79, 116 S.Ct. at 1182.

Petitioner also argues that the violation is ongoing or continuing in the sense that the consequence of Judge Phillip's decision not to allow Petitioner to assist Defendant in pre-

senting Pet Scan evidence at trial resulted in the Defendant being convicted of first degree murder. In *Paraguay*, however, the court found no continuing violation because the relief sought, voiding the final state conviction, was quintessentially retrospective. This case is distinguishable, however, because at the time the motion for writ of mandamus or to stay was filed, the relief sought was prospective. The Petitioner sought to enjoin the trial court from conducting the trial without allowing the Petitioner to assist in the defense of the Defendant's case.

This Court, however, finds that at the time this case was filed, the violation of federal treaty law was not on-going because the Petitioner had access to Soto. Petitioner was involved in the case for over a year, and only on the eve of trial did Petitioner take an active role.

This Court finds that the treaty violation is not a continuing violation of federal treaty law, as required to bring it within the Ex parte Young exception to the Eleventh Amendment immunity protecting state officials. Thus, this Court does not have subject matter jurisdiction and the case must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

### F. Younger Abstention Doctrine

Assuming, arguendo, that the Eleventh Amendment does not protect the State of Florida from Petitioner's action in this Court absent the state's consent, this Court must determine if abstention is appropriate.

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court enunciated "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."

In *Pompey v. Broward County*, 95 F.3d 1543 (11th Cir.1996), the Eleventh Circuit Court of Appeals discussed the importance of the Younger doctrine regarding state court

proceedings and noted that there exist many avenues for post-conviction relief. The court found that a defendant "could raise their claims in ... the ... state court ... or could 'challenge the legality of their custody via federal habeas corpus, subject, of course, to prior exhaustion of state remedies.'" *Id.* at 1548 (quoting *Luckey v. Harris*, 896 F.2d 479, 482).

The Petitioner contends that it cannot obtain relief in state court because Judge Phillips refuses to allow Petitioner standing to "seek such relief." The Petitioner further contends that pursuant to Fla.Stat. § 924.051, the state court prevented Petitioner from making a proper record of its requested relief. Section 924.051 provides in pertinent part as follows:

> [A]n appeal may not be taken from a judgment or order of a trial court unless a prejudicial error is alleged and is properly preserved or, if not properly preserved, would constitute fundamental error.

Section 924.051 defines "preserved" to mean that:

> [A]n issue, legal argument, or objection to evidence was timely raised before, and ruled on by, the trial court, and that the issue, legal argument, or objection to evidence was sufficiently precise that it fairly apprised the trial court of the relief sought and the grounds thereof.

The Petitioner contends that it will be irreparably harmed if this Court does not enter a Writ of Mandamus or, in the alternative, enjoin Judge Phillips from conducting the sentencing because the Petitioner will not be able to raise the Pet Scan issue on appeal. This Court does not agree.

■ First, Mexico does not have a right under any treaty presented to this Court for consideration, to present evidence of organic brain damage obtained by Pet Scan or any other procedure. Judge Phillips provided three primary reasons for denying the Defendant's Motion: (1) the Defendant failed to provide evidence regarding the necessity and relevancy of the PET Scan for presentation

at trial; (2) transporting the Defendant to Jacksonville presented security risks; and (3) the Petitioner presented no evidence suggesting that funds were available to pay for the PET Scan.

The Petitioner has the right to assist Defendant in obtaining a PET Scan only if the Defendant is entitled to present such evidence at the sentencing hearing under Florida law. Although the Petitioner is able to alleviate one of three concerns identified by Judge Phillips, the Petitioner fails to address the remaining two concerns. Whether the Defendant is entitled to present such evidence is a determination properly left to Judge Phillips. Judge Phillips determined that the availability of funds was insufficient in itself to entitle the Defendant to obtain the Pet Scan test.

The Petitioner has preserved its ability to appeal Judge Phillip's denial of Petitioner's request to assist the Defendant in obtaining the Pet Scan test. Judge Phillips heard argument from the Petitioners counsel and denied the relief. That appears sufficient under § 924.051 to preserve the issue for appeal. And under Florida law, the Petitioner may intervene on appeal to protect its rights. Thus, Petitioner is not irreparably harmed if this Court chooses to abstain.

The Petitioner's second contention of irreparable harm is that through the passage of time, presumably the time necessary to make an appeal, the results obtained from future Pet Scan testing will be less reliable. Petitioner provided no medical authority to support that proposition. And absent such evidence, this Court finds that Petitioner has failed to show irreparable harm. Moreover, there are procedural remedies that Petitioner could invoke to prevent the alleged irreparable harm. Petitioner could file an appeal and request that the state appellate court rule on the appeal on an expedited basis.

### CONCLUSION

Therefore it is

**ORDERED AND ADJUDGED** that Petitioner's Emergency Petition For Writ Of

Mandamus And Emergency Motion For Stay Of Proceedings is DENIED.