Surima SUAREZ–CESTERO, Et
Al., Plaintiffs, Appellants,

v.

Daniel PAGAN–ROSA, Et Al.,
Defendants, Appellees.

No. 98–1603.

United States Court of Appeals,
First Circuit.

Heard March 1, 1999.

Decided April 1, 1999.

José R. García–Pérez, with whom Bufete
Bennazar, C.S.P., was on brief, for appel-
lants, except Clarizza Suárez.

Lizzie M. Portela, with whom Paul B.
Smith, Jr., and Smith & Nevares were on
brief, for appellee Daniel Pagán–Rosa.

Miguel A. Pagán–Rivera, with whom Ro-
dolfo G. Ocasio–Bravo, Edwin D. Santos–
Baerga and Pagán & Pagán were on brief,
for appellee Ferdín Carrasquillo.

Before TORRUELLA, Chief Judge,
COFFIN, Senior Circuit Judge, and
SELYA, Circuit Judge.

TORRUELLA, Chief Judge.

Plaintiffs-appellants challenge the dis-
trict court's dismissal of their equitable
claim on the grounds of mootness. We
affirm on a different ground.

Because this case turns principally on its
procedural posture, we do no more than
skim the facts. *See CMM Cable Rep., Inc.
v. Ocean Coast Properties, Inc.,* 48 F.3d
618, 619 (1st Cir.1995).

Plaintiffs are the owners in fee simple of
a parcel of land in the Medianía Baja Ward
of the Municipality of Loíza in the Com-
monwealth of Puerto Rico. One of the
plaintiffs-appellants, Surima Suárez–Ceste-
ro, has a contract for the extraction of
sand from the property and a Department
of Natural Resources and the Environ-
ment ("DNRE") permit for its extraction.
She alleges that the extraction of sand is
the first phase of the development of a
residential project.

Suárez allegedly sought and received approval for the project from the Puerto Rico Aqueduct and Sewers Authority, the Puerto Rico Electric Power Authority, the Department of Transportation and Public Works, the Institute of Puerto Rican Culture, the Puerto Rico Telephone Company, the Puerto Rico Environmental Quality Board, as well as from the Municipality of Loíza and the DNRE.[1] Plaintiffs-appellants allege that although the sand extraction was incidental to the project, as approved by the above agencies, the DNRE additionally required that Suárez obtain an extraction permit. Suárez complied with all of the application requirements and, after public notice and without opposition, the permit was issued in December 1996. Plaintiffs-appellants claim that they relied on the permit and commenced sand extraction in January 1997.

On April 29, 1997, the Municipality filed a civil action in the Carolina Superior Court requesting a temporary restraining order and temporary and permanent injunctions to prevent the extraction of sand from the property. It averred that the construction permits requested for the development project were a subterfuge for obtaining a commercial sand extraction permit which would create an artificial lake without properly evaluating the individual and cumulative environmental impact on the surrounding area. The Superior Court issued a temporary restraining order.

Needless to say, civil and administrative proceedings resulted. As part of the administrative proceedings, on June 6, 1997, the Secretary of the DNRE issued a Cease and Desist and Show Cause Order against Suárez enjoining her from further extraction activities and ordering her to show cause why the permits should not be modified and/or revoked. On June 24, Suárez filed an answer and requested an adminis-

trative hearing. After the Carolina Superior Court refused to issue the permanent injunction (and dissolved the earlier restraining order), Suárez notified the DNRE that its Cease and Desist Order was no longer valid because the Municipality's action had been dismissed, and that she was going to resume extraction activities. On August 8, Pagán–Rosa, Secretary of the DNRE, notified Suárez that the administrative proceedings against her were to continue and that any request or petition should be presented by motion in the administrative case. Suárez then requested that the administrative case be dismissed. When it was not, believing that the Cease and Desist Order constituted a continuing violation of their due process rights, plaintiffs-appellants filed a verified complaint and request for a temporary restraining order in federal district court on August 19, 1997.

The hearing on the requested injunctive relief was set for September 24. On September 23, 1997, the Governor of Puerto Rico signed into law Joint Resolution of the Senate No. 398. The statute declared a year-long moratorium on the issuance of sand extraction permits by the DNRE in Loíza, and stayed the effectiveness of all existing permits, pending an environmental study of the impact of sand extraction in the area.

In its Opinion and Order, the district court dismissed plaintiffs-appellants' claim for equitable relief on the ground of mootness because "an injunction enjoining defendants from interfering with plaintiff's sand extraction activities would be, in fact, of no benefit to plaintiffs, since they are equally impeded by [Senate Joint resolution No. 398]." *Opinion and Order* at 9.

"[C]ourts of appeal will reverse a district court's denial of a preliminary injunction only if the district court abused its discretion." *American Bd. of Psychiatry and*

---

1. Daniel Pagán–Rosa is one of the defendants-appellees in his personal and official capacities as Secretary of the Department of Natural Resources and the Environment. Ferdín Car-

rasquillo–Ayala is one of the defendants-appellees in his personal and official capacities as Mayor of Loíza.

*Neurology, Inc. v. Johnson–Powell,* 129 F.3d 1, 2–3 (1st Cir.1997).

 We conclude that the district court acted within its discretion in refusing to entertain the claim for preliminary injunctive relief at the start of the moratorium period, albeit for a different ground than that cited by the district court. In order to gain a preliminary injunction in the First Circuit, a plaintiff must satisfy four criteria. The court must find:

> (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.

*Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1008–09 (1st Cir.1981).

 Irreparable harm is a necessary precondition to a preliminary injunction and, given the moratorium on sand extraction in place, none existed here. By definition, the court's refusal to grant a preliminary injunction caused plaintiffs no harm since they were equally impeded by the moratorium.[2] As a result, plaintiffs-appellants were not entitled to a preliminary injunction.

In theory, the district court should have dismissed only the request for a preliminary injunction, not the request for a permanent injunction—which the district court did by denying all equitable relief. Nevertheless, to the degree that the moratorium is no longer in existence, the plaintiffs can renew their request for temporary equitable relief; and the time to consider permanent injunctive relief will come at the close of the case, and will not be foreclosed either by the lower court's ruling or by this court's opinion.

**Affirmed.**

---

**2.** At the time of the hearing before the district court, the plaintiffs had shown no likelihood that the statutory moratorium was invalid or otherwise unenforceable.