**ESTADOS UNIDOS MEXICANOS,**
**et al., Plaintiffs,**

v.

**Austin J. DECOSTER,**
**et al., Defendants.**

**No. Civ. 98–186–P–H.**

United States District Court,
D. Maine.

Aug. 9, 1999.

Harold J. Friedman, Friedman, Babcock & Gaythwaite, Portland, Maine, for plaintiffs.

Timothy J. O'Brien, Verrill & Dana, Portland, Maine, for defendant Decoster.

Thomas H. Somers, Hoff, Curtis, Pacht, Cassidy & Frame, Portland, Maine, Kerin E. Stackpole, Hoff, Curtis, Pacht, Cassidy & Frame, Burlington, VT, for defendant Maine AG & Quality Egg.

## ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF ESTADOS UNIDOS MEXICANOS

HORNBY, Chief Judge.

Can a foreign nation maintain *parens patriae*[1] standing in a United States court to seek declaratory and injunctive relief on behalf of its citizens or their American descendants against ethnic discrimination

1. Literally, "parent of the country," with roots in the common law concept of the "roy-

by a private employer? I hold that a foreign nation cannot sue as *parens patriae* in this manner.

Individual plaintiffs,[2] migrant workers in Maine, seek relief against Maine companies and individuals for their alleged unlawful employment practices. Estados Unidos Mexicanos, the nation of Mexico, has joined the lawsuit with respect to the claim under 42 U.S.C. § 1981. Mexico seeks injunctive and declaratory relief concerning discrimination against migrant workers "of Mexican race and descent." Compl. at ¶ 7. Some of the individual plaintiffs are Mexican citizens or nationals; others are American citizens of Mexican ancestry.[3] Mexico claims standing as *parens patriae* for all of them under the rule of *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982). The defendants have moved to dismiss Mexico as a plaintiff on three grounds: (i) that *parens patriae* standing is not available to foreign nations; (ii) that even if the doctrine can apply to foreign nations in some cases, it does not apply to Mexico in this case; and (iii) that a labor side agreement to the North American Free Trade Agreement ("NAFTA") bars Mexico's suit. The motion is GRANTED on the first ground alone.

## ANALYSIS

I make clear at the outset that this is not a question of statutory interpretation. No one has argued that the Congress that enacted section 1981 intended it to encompass foreign nations as aggrieved plaintiffs or that section 1981's plain meaning extends that far. Instead, the issue here is prudential, a question of judge-made law: Should a federal court that has jurisdiction over a discrimination lawsuit brought by private aggrieved employees allow a for-

eign nation also to appear as plaintiff to seek relief in general support of its nationals or their American descendants? The private plaintiffs will be able to pursue their employment discrimination claims in this case regardless of whether Mexico is accorded standing to assert its request for declaratory and injunctive relief. If the private plaintiffs can prove their case, United States law affords a very ample remedy for discrimination. It would be tempting, therefore, simply to ignore the standing issue concerning Mexico and allow it to remain as a party plaintiff. But the standing doctrine is one of the most important safeguards against judicial overreaching. *See Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

> Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked. The requirement of standing, however, has a core component derived directly from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.

*Id.* at 751, 104 S.Ct. 3315 (citations omitted).

In this case, Mexico is not merely asserting the private plaintiffs' rights against discrimination. If that were all it was doing, it clearly would not have standing.

al prerogative," but now reflecting a " 'quasi-sovereign' interest, which is a judicial construct that does not lend itself to a simple or exact definition." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,* 458 U.S. 592, 600–01, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982).

**2.** A motion for class certification has been filed, but it is contested and briefing is not yet complete.

**3.** Apparently Mexico recognizes dual citizenship. *See* Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 8, n. 4.

*See id.* at 755, 104 S.Ct. 3315; *Snapp*, 458 U.S. at 602, 102 S.Ct. 3260. If I allow Mexico to remain as a party plaintiff, it can be only because Mexico is entitled to represent a separate interest of its own. I emphasize also that the question presented here is a difficult one, one that workaday trial judges and lawyers do not regularly confront, at least in this District. I invited the United States State Department to file an amicus brief on the standing issue, but it declined. I therefore proceed without the benefit of such assistance.[4]

Foreign nations long have been allowed to bring suit in United States federal courts to assert their *proprietary* interests, *i.e.*, economic interests that are the same as a private litigant may have. *See Pfizer, Inc. v. Government of India*, 434 U.S. 308, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978) (holding that foreign nations, as purchasers of antibiotics, are persons within the meaning of the Clayton Act and can sue for treble damages); *Banco Nacional de Cuba v. Sabbatino* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (holding that an instrumentality of a foreign sovereign has standing to sue in United States courts for conversion of bills of lading); *The Sapphire*, 78 U.S. (11 Wall.) 164, 20 L.Ed. 127 (1870) (holding that a foreign sovereign can sue in United States admiralty courts for damages to a vessel owned by the sovereign). By the same token, the parties have cited no cases where foreign nations have been permitted to sue in United States federal courts to implement their *sovereign* interests—for example, to enforce their own national criminal laws, to establish their borders, etc.

But Mexico advances neither proprietary nor sovereign interests to support its standing in this lawsuit. Instead, it asserts standing under a third category carved out by the United States Supreme Court in *Snapp* for domestic states within the Union—a "quasi-sovereign" interest, which permits a domestic state to sue as *parens patriae* on behalf of its citizens.

In the *Snapp* case, Puerto Rico had recruited 2,318 of its citizens to fulfill the need for temporary farm work during the 1978 East Coast apple harvest. Virginians, however, refused to employ Puerto Ricans—less than 30 of the 420 who came to Virginia orchards were employed three weeks later, *see Snapp*, 458 U.S. at 597, 102 S.Ct. 3260—and Puerto Rico as *parens patriae* sued the Virginia apple growers under 42 U.S.C. § 1981 for discrimination. *Snapp* articulated several types of interest that a domestic state might assert:

(a) "stepping in to represent the interests of particular citizens who, for whatever reason, cannot represent themselves." In that case, a state would be "only a nominal party without a real interest of its own," and therefore would have no standing, *id.* at 600, 102 S.Ct. 3260[5];

(b) sovereign interests (such as enforcement of a state's own legal code and recognition of its borders), *see id.* at 601, 102 S.Ct. 3260, not the type of interests asserted by Mexico here;

(c) proprietary interests (such as land ownership or business ventures), *see id.*, also not asserted by Mexico here; and

---

4. I am acutely aware of the Supreme Court's pronouncement that "[w]hether a foreign sovereign will be permitted to sue involves a problem more sensitive politically than whether the judgments of its courts may be re-examined, and the possibility of embarrassment to the Executive Branch in handling foreign relations is substantially more acute." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 412, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964).

5. Certainly Mexico is more than a nominal plaintiff here. Although the individual and putative class plaintiffs may be able to recover damages, the "universal sting" of discrimination is broader and affects the quasi-sovereign interest of the governmental entity. *See Snapp*, 458 U.S. at 609, 102 S.Ct. 3260; *Commonwealth of Massachusetts v. Bull HN Info. Systems, Inc.*, 16 F.Supp.2d 90, 97 (D.Mass. 1998). This quasi-sovereign interest is not redressed by the private remedies alone.

(d) quasi-sovereign interests—"a set of interests that the State has in the well-being of its populace;" *id.* at 602; 102 S.Ct. 3260.

The Supreme Court held that Puerto Rico's interest in protecting Puerto Rican citizens against employment discrimination was a "quasi-sovereign" interest. According to *Snapp*, that interest supported Puerto Rico's claim of *parens patriae* standing because the employment discrimination affected a broader segment of the Puerto Rican population than the relatively small number of individuals directly denied jobs and in fact carried a "universal sting" potentially affecting all Puerto Ricans. *Id.* at 609, 102 S.Ct. 3260. It is on this basis that Mexico claims standing here.

Although *Snapp* dealt with the Commonwealth of Puerto Rico, its reasoning extends to any state within the Union. But no case has ever held that a foreign nation has standing to represent its citizens or its ethnic groups in United States federal courts under the *Snapp* quasi-sovereign/*parens patriae* doctrine. It is one thing to say that one of the fifty states, or a commonwealth or a territory, can sue in federal courts and use United States laws to protect its populace from discrimination; it is something else to say that a foreign nation can do the same thing. The Eighth Circuit has held that *if* a foreign nation has any standing to sue in this manner as *parens patriae* (a question the court did not reach), such standing is no more expansive than the standing available to a state within the Union. *See Pfizer, Inc. v. Lord,* 522 F.2d 612, 618–19 (8th Cir.1975). That is an unremarkable proposition, but it does not resolve the underlying issue of whether standing exists in the first place. Mexico also points to a law journal note

and dictum from another district court supporting its assertion that a foreign nation can claim *Snapp parens patriae* standing to the same extent that an American state can. *See* Pls.' Resp. to Defs.' Mot. to Dismiss at 6; *Coordination Council for N. Am. Affairs v. Northwest Airlines, Inc.,* 891 F.Supp. 4, 7 n. 3 (D.D.C. 1995) ["CCNAA"];[6] Lisa Moscati Hawkes, Note, *Parens Patriae and the Union Carbide Case: The Disaster at Bhopal Continues,* 21 CORNELL INT'L L.J. 181, 187 & n. 44 (1988). But the assertion is too great a stretch in light of the separation of powers doctrine.

The *Snapp* quasi-sovereign interest analysis simply is not a good fit for a foreign nation.[7] First, one of the earliest of the *parens patriae* cases analyzed by the Supreme Court in *Snapp, Missouri v. Illinois,* 180 U.S. 208, 21 S.Ct. 331, 45 L.Ed. 497 (1901), specifically distinguished foreign nations from domestic states for such purposes. Foreign nations, unlike domestic states, said the Court, could pursue remedies through diplomatic negotiation or force. It was because domestic states had surrendered diplomatic powers and the right to make war that they needed the judicial remedy and standing. *See id.* at 241, 21 S.Ct. 331. Second, in demanding that a domestic state "express a quasi-sovereign interest" before it would be accorded *parens patriae* standing, *Snapp* recognized "two general categories" of such interests—(i) "a [state's] quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general"; and (ii) "a [state's] quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system." 458 U.S. at 607, 102 S.Ct. 3260. Plainly the second category does not fit a foreign nation, such

---

**6.** The *CCNAA* court proceeded to deny Taiwan standing on a different ground—that the claimed injury could not be redressed. *See* 891 F.Supp. at 8.

**7.** There are other legal principles applicable to domestic states that cannot be extended to

foreign nations. *See, e.g., Guaranty Trust Co. v. United States,* 304 U.S. 126, 132–36, 58 S.Ct. 785, 82 L.Ed. 1224 (holding that foreign nations are not exempt from statutes of limitations while domestic states are).

as Mexico, for it has no status within the United States federal system. The only question, then, is whether the first alone—Mexico's interest in the health and well-being of its residents—is enough to allow it standing to sue in United States courts to bring a halt to discrimination against migrant workers "of Mexican race and descent." I hold that it is not.

Granting a foreign nation *parens patriae* standing in federal court to advance its quasi-sovereign interests in protecting its citizens or their American descendants raises worrisome separation of powers issues in the absence of an applicable treaty providing for such lawsuits.[8] It bears repeating that Mexico is not simply advancing the interests of individual plaintiffs who claim to have been victims of discrimination. The caselaw is clear that Mexico does not have standing to do so. Mexico also is not appearing in a proprietary capacity advancing an economic interest of its own just like that of any private litigant. For those purposes, Mexico clearly would have standing. Instead, Mexico seeks to advance in United States courts a quasi-sovereign interest. It is, of course, an exceedingly important interest: freedom from ethnic discrimination is a fundamental goal that this country's laws seek as well. But to recognize a foreign nation's standing to assert a quasi-sovereign interest in federal court is to ask the federal courts to deal with that foreign country in its capacity as a sovereign nation and to permit its government to use United States federal courts to pursue its sov-

ereign public policy goals. Having the federal courts recognize or reject the legitimacy of these quasi-sovereign interests intrudes upon the foreign relations and treaty-making power and involves the courts in matters of foreign policy that are ordinarily committed to the political branches.

Assume, for example, that Mexico is accorded standing, pursues this lawsuit and seeks preliminary injunctive relief in advance of a final injunction. Under First Circuit caselaw, one of the things a trial judge must do in deciding whether to issue a preliminary injunction is to weigh the competing interests. See *Suarez–Cestero v. Pagan–Rosa*, 172 F.3d 102, 104 (1st Cir.1999). How am I to weigh the quasi-sovereign interests of Mexico against the commercial and other interests of United States citizens without becoming involved in matters that belong to the representative branches of government? A trial judge is also to consider the "public interest" in making a decision on a preliminary injunction. *Id.* What would be the scope of that term here—am I thereby to consider the foreign relations ramifications of any decision I might make? And then, if Mexico obtains injunctive or declaratory relief, what of enforcement? Are contempt proceedings in federal court the appropriate vehicle for foreign sovereigns to monitor the employment practices of United States citizens? And if the defendants should fail to comply adequately with a decree, what further relief might I then be asked to grant Mexico against the defen-

---

**8.** Congressional legislation granting this type of standing in the absence of a treaty might also present difficult constitutional issues. *Cf. People of Enewetak v. Laird*, 353 F.Supp. 811, 818 (D.Haw.1973) (standing by a Pacific Trust territory to enforce the National Environmental Policy Act of 1969 does not raise foreign policy concerns because the Trust territory is subject to United States authority). I am aware of one case that, although it dismissed the claim for lack of subject matter jurisdiction on Eleventh Amendment grounds, recognized a foreign nation's standing to enforce treaty provisions and even a cause under § 1983 for a consul general to sue to enforce

treaty provisions. *See Republic of Paraguay v. Allen*, 949 F.Supp. 1269, 1274 (E.D.Va.1996), aff'd, 134 F.3d 622 (4th Cir.1998). In affirming the lower court on Eleventh Amendment grounds in *Paraguay*, the Fourth Circuit avoided the standing question. *See* 134 F.3d at 626 & n. 4. I am aware of only one other case involving a foreign sovereign's suit for redress in federal court for violation of a treaty obligation; in that case, as well, the appellate court affirmed a dismissal on Eleventh Amendment grounds, thereby avoiding the question of standing. *See United Mexican States v. Woods*, 126 F.3d 1220, 1224 n. 3 (9th Cir.1997).

dants, where by definition no proprietary interests are at stake, but only quasi-sovereign interests? To use the national courts of this country to enforce the quasi-sovereign interests of a foreign state seems fraught with difficulties.

If Mexico's citizens or their descendants in Maine suffer ethnic prejudice, Mexico can finance their private lawsuits in United States courts. If Mexico concludes that its quasi-sovereign interests are threatened, Mexico can negotiate with the United States to provide relief by treaty or otherwise. Mexico also may pursue any remedies available under international law.[9] But a *parens patriae* suit under United States domestic law in federal court—pressing, for example, for an expansive or new reading of federal statutes or the Constitution to benefit Mexican citizens abroad—would involve the federal courts in matters that properly belong to treaty negotiations between our respective countries.[10]

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the claim of the plaintiff Estados Unidos Mexicanos for lack of standing is GRANTED.

**So Ordered.**

---

**9.** *Cf., e.g.,* RESTATEMENT (THIRD) OF FOREIGN RELATIONS § 713 cmt. a (1987) (dealing with recovery against a government rather than against a private party).

**10.** *A fortiori* that seems true with respect to any attempt by Mexico to protect the interests of United States citizens of Mexican ancestry.

*Cf.* RESTATEMENT (THIRD) OF FOREIGN RELATIONS § 713 cmt. c (1987) (discussing the conditions under which a state may and may not intercede on behalf of a national of another state in a dispute between the national and that other state).