134 F.3d 622
 The REPUBLIC OF PARAGUAY; Jorge J. Prieto, Ambassador of
the Republic of Paraguay to the United States; Jose Antonio
Dos Santos, Consul General of the Republic of Paraguay to
the United States, Plaintiffs-Appellants,
v.
George F. ALLEN, Governor of the Commonwealth of Virginia;
Richard Cullen, Attorney General for the Commonwealth of
Virginia; David A. Garraghty, Warden, Greensville
Correctional Facility, Jarratt, Virginia; Samuel V. Pruett,
Warden, Mecklenburg Correctional Facility, Boydton,
Virginia; Paul F. Sheridan, Judge for the Circuit Court of
Arlington County, Virginia; Benjamin N.A. Kendrick, Judge
for the Circuit Court of Arlington County; William Newman,
Jr., Judge for the Circuit Court of Arlington County;
William L. Winston, Honorable, Judge for the Circuit Court
of Arlington County; Richard E. Trodden, Commonwealth's
Attorney for the County of Arlington; Robert A. Dreischer,
Acting Chief of Police of Arlington County; Ronald J.
Angeline, Director of Corrections for the Commonwealth of
Virginia, Defendants-Appellees,
Union Internationale Des Avocets; United States of America;
Frederick M. Abbott; David J. Bederman; Richard B.
Bilder; David D. Caron; Anthony D'Amato; Lori Fisler
Damrosch; William Dodge; Martha A. Field; Joan M.
Fitzpatrick; Egon Guttman; Louis Henkin; Harold Hongju
Koh; Burt Lockwood; Stefan A. Riesenfeld; Oscar
Schachter; Herman Schwartz; Anne-Marie Slaughter; Ralph
Gustav Steinhardt; David Weissbrodt, Amici Curiae.
 No. 96-2770.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 4, 1997.
Decided Jan. 22, 1998.
 
 ARGUED: Donald Francis Donovan, Debevoise & Plimpton, New York City, for Appellants. Donald Richard Curry, Senior Assistant Attorney General, Office of the Attorney General, Richmond, VA, for Appellees. Douglas Neal Letter, Appellate Litigation Counsel, Civil Division, United States Department of Justice, Washington, DC, for Amici Curiae. ON BRIEF: Barton Legum, Michael M. Ostrove, Alexander A. Yanos, Debevoise & Plimpton, New York City; Loren Kieve, Debevoise & Plimpton, Washington, DC; Rodney A. Smolla, Linda A. Malone, Marshall-Wythe School of Law, College of William and Mary, Williamsburg, VA; Leslie M. Kelleher, T.C. Williams School of Law, University of Richmond, Richmond, VA, for Appellants. James S. Gilmore, III, Attorney General of Virginia, Office of the Attorney General, Richmond, VA; Ara L. Tramblian, Deputy County Attorney, Office of the County Attorney, Arlington, VA, for Appellees. Frank W. Hunger, Assistant Attorney General, Helen F. Fahey, United States Attorney, Civil Division, United States Department of Justice, Washington, DC, for Amicus Curiae United States. John Cary Sims, Sacramento, CA; Steven A. Hammond, Hughes, Hubbard & Reed, L.L.P., New York City, for Amicus Curiae Union Internationale. David J. Bederman, Atlanta, GA, for Amici Curiae Law Professors.
 Before WIDENER and MURNAGHAN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 Affirmed by published opinion. Senior Judge PHILLIPS wrote the opinion, in which Judge WIDENER and Judge MURNAGHAN joined.
 OPINION
 PHILLIPS, Senior Circuit Judge:
 
 
 1
 The Republic of Paraguay and its Ambassador and Consul General to the United States appeal from the district court's dismissal of their action seeking declaratory and injunctive relief against the Governor and other officials of the Commonwealth of Virginia (hereinafter "the Commonwealth" or "Commonwealth Officials"). Paraguay sought a declaration of violation by the Commonwealth of treaties between Paraguay and the United States, the vacatur of a capital conviction and death sentence imposed by the Commonwealth on a Paraguayan national in alleged violation of the treaties, and an injunction against further violations. The district court determined that it did not have subject matter jurisdiction over the case and dismissed it pursuant to Fed.R.Civ.P. 12(b)(1). We affirm.
 
 
 2
 * Angel Francisco Breard was arrested on August 17, 1992, by the Arlington, Virginia police on suspicion of the murder of Ruth Dickie, who was killed in February 1992. Though Breard is a citizen of the Republic of Paraguay, the Arlington and Virginia authorities did not advise him of any right to contact the Paraguayan consulate to consult with it throughout his detention and trial. The Circuit Court of Arlington County did, however, appoint two attorneys to represent Breard. On June 24, 1993, after a four-day trial, a jury convicted Breard of capital murder and attempted rape, and fixed punishment for the rape at ten years' imprisonment and a fine of $100,000. After a separate sentencing proceeding, the jury recommended that Breard be sentenced to death for the murder, and after an additional hearing on September 9, 1993, the state court entered a final judgment imposing the death penalty. The Virginia Supreme Court then affirmed Breard's conviction and sentence on direct review, Breard v. Commonwealth, 248 Va. 68, 445 S.E.2d 670 (1994), and the United States Supreme Court denied certiorari. See 513 U.S. 971, 115 S.Ct. 442, 130 L.Ed.2d 353 (1994). At no point in his direct appeal did Breard allege that the Commonwealth had violated any treaty provision during the period of his detention and trial.
 
 
 3
 The circuit court then appointed new counsel to represent Breard in his state habeas corpus proceedings. In his state court petition Breard again failed to allege violations of any treaty. The circuit court dismissed Breard's petition in July 1995, and the Virginia Supreme Court refused his petition for appeal in January 1996. At some point after this date, Paraguay's ambassador and general consul became aware of Breard's conviction and sentence and sought to confer with Breard in accordance with international treaties providing that right. The Commonwealth acquiesced, and Paraguay's officers have been given free access to Breard since that time.
 
 
 4
 In August 1996, Breard filed a federal habeas corpus petition in the United States District Court for the Eastern District of Virginia in which he claimed that the Commonwealth had violated his rights under Article 36(1) of the Vienna Convention on Consular Relations ("Vienna Convention"), to which both Paraguay and the United States are signatories. That section provides:
 
 
 5
 (b) [I]f he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph;
 
 
 6
 (c) [C]onsular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation. They shall also have the right to visit any national of the sending State who is in prison, custody or detention in their district in pursuance of a judgment. Nevertheless, consular officers shall refrain from taking action on behalf of a national who is in prison, custody or detention if he expressly opposes such action.
 
 
 7
 Vienna Convention on Consular Relations, Apr. 24, 1963, Art. 36(1), 21 U.S.T. 77, 596 U.N.T.S. 261.
 
 
 8
 The district court dismissed Breard's petition on the ground of procedural default in failing to raise the treaty-violation claim at any point in the state court proceedings. See Breard v. Netherland, 949 F.Supp. 1255, 1263 (E.D.Va.1996) (citing Gray v. Netherland, 518 U.S. 152, ---- - ----, 116 S.Ct. 2074, 2080-81, 135 L.Ed.2d 457 (1996)). Breard's appeal to this court from the dismissal of his petition is pending as of this writing.[1]
 
 
 9
 In September, 1996, the Republic of Paraguay, Jorge J. Prieto, its Ambassador to the United States, and Jose Antonio Dos Santos, its Consul General to the United States, (collectively "Paraguay") brought this action against the named Commonwealth officials alleging that Paraguay's separate rights under the earlier-quoted provisions of the Vienna Convention and those of another treaty requiring comparable notification, had been violated by the Commonwealth's failure to inform Breard of his rights under the treaties and to inform the Paraguayan consulate of Breard's arrest, conviction and sentence.[2] The action included a joint claim based directly upon Paraguay's treaty rights and, for Dos Santos, a parallel claim under 42 U.S.C. § 1983 alleging denial of his rights under federal treaty law by the conduct of Commonwealth officials taken under color of state law.
 
 
 10
 In its claims, Paraguay sought as relief a declaration of treaty violation, a vacatur of Breard's conviction and sentence, and an injunction against further violations of the treaty provisions. The Commonwealth moved to dismiss the action under Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on standing, subject matter jurisdiction, and merits grounds. The district court first determined that Paraguay and its officials had standing to bring their claims under the treaties, emphasizing that Paraguay was asserting its own rights and not those of Breard. Republic of Paraguay v. Allen, 949 F.Supp. 1269, 1274 (E.D.Va.1996). The court also concluded that Dos Santos had standing to maintain his parallel § 1983 claim because he was a "person" within the meaning of the Act. Id. at 1275 (citing United States v. Wong Kim Ark, 169 U.S. 649, 678-81, 18 S.Ct. 456, 468-69, 42 L.Ed. 890 (1898)).
 
 
 11
 The court ultimately decided, however, that it did not have subject matter jurisdiction because the claimants were not alleging a "continuing violation of federal law" and therefore could not bring their claims within the exception to Eleventh Amendment immunity established in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). 949 F.Supp. at 1273 (citing Papasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), and Milliken v. Bradley, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977)). Alternatively, the court held that it did not have "jurisdiction to review final decisions of a state court," and therefore could not order the vacatur of Breard's conviction and sentence obtained in Virginia's courts. 949 F.Supp. at 1273 (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827, 1841-42, 36 L.Ed.2d 439 (1973)). The district court therefore dismissed the action.
 
 
 12
 This appeal followed.
 
 II
 
 13
 Paraguay challenges both of the grounds upon which the district court dismissed the action for lack of subject matter jurisdiction. The Commonwealth defends the dismissal on both grounds and also urges as an alternative basis for affirmance that the claims raise only nonjusticiable "political questions."[3] We review de novo the district court's dismissal of the action for lack of subject matter jurisdiction. See White v. United States, 53 F.3d 43, 45 (4th Cir.1995) (citing Ahmed v. United States, 30 F.3d 514, 516 (4th Cir.1994)).
 
 
 14
 Because we consider it dispositive of the appeal, we address only the Eleventh Amendment ground of the district court's dismissal of the action for lack of subject matter jurisdiction.[4]
 
 
 15
 Though the basic Eleventh Amendment principles are settled and familiar, we summarize them here briefly. The Amendment imposes, in the form of sovereign immunity, "a constitutional limitation on the federal judicial power" over certain actions against unconsenting states of the Union. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 98, 104 S.Ct. 900, 906-07, 79 L.Ed.2d 67 (1984). Though the immunity thus provided runs literally only to actions by "Citizens of another state or by Citizens or Subjects of any foreign State," it has been judicially interpreted to run as well to actions by a state's own citizens, Hans v. Louisiana, 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890), by Indian tribes, Blatchford v. Native Village of Noatak, 501 U.S. 775, 781, 111 S.Ct. 2578, 2582, 115 L.Ed.2d 686 (1991), and, critically to this case, by foreign states, Principality of Monaco v. Mississippi, 292 U.S. 313, 322-23, 54 S.Ct. 745, 747-48, 78 L.Ed. 1282 (1934); see also Seminole Tribe of Florida v. Florida, 517 U.S. 44, 66, 116 S.Ct. 1114, 1129, 134 L.Ed.2d 252 (1996) (citing Monaco for principle).
 
 
 16
 The immunity extends not only to actions against States as named parties but to actions such as that here against state officials that are in fact actions against the state as the real party in interest. See Pennhurst, 465 U.S. at 101-02, 104 S.Ct. at 908-09. Immunity in actions against state officials, is, however, subject to the critical exception announced in Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), under which federal courts may exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective. See id. at 149-50, 28 S.Ct. at 449-50, Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 425-26, 88 L.Ed.2d 371 (1985). This means that under the Ex parte Young exception, which is based upon the recognized fiction that the officials' conduct is not that of the state, "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." Quern v. Jordan, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979).
 
 
 17
 Conversely, the exception does not permit federal courts to entertain claims seeking retrospective relief, either compensatory or other, for completed, not presently ongoing violations of federally-protected rights. See Edelman v. Jordan, 415 U.S. 651, 666-67, 94 S.Ct. 1347, 1357-58, 39 L.Ed.2d 662 (1974) (distinguishing for Ex parte Young purposes between retrospective and prospective relief).
 
 
 18
 The parties here join issue precisely on the questions whether the violations alleged by Paraguay are "ongoing" ones and whether the relief sought is only "prospective." We agree with the district court that the violation alleged here is not an ongoing one for Ex parte Young purposes and, with the Commonwealth, that the essential relief sought is not prospective.[5]
 
 
 19
 Paraguay says the violation is "ongoing" or "continuing" in the sense that its "consequences" persist in Breard's continuation in custody under death sentence without benefit of the timely counseling that was prevented by the violation. The Commonwealth counters that there is no ongoing violation of Paraguay 's treaty rights, as distinguished from those of Breard, because Paraguay is presently on notice of Breard's situation and the Commonwealth is not now preventing Paraguay from giving whatever aid and counsel to Breard it desires. The only "present consequences" being experienced from the past violation of treaty rights, says the Commonwealth, are any that Breard himself may be experiencing through lack of timely counseling, and these may, and have been, properly raised by Breard in his federal habeas corpus action.[6]
 
 
 20
 Paraguay seeks to avoid the obvious fact that the actual violation alleged is a past event that is not itself continuing by drawing on decisions allowing Ex parte Young suits which sought injunctive relief for what were considered to be ongoing consequences of past violations of federal rights. Specific reliance is placed on Papasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), and Milliken v. Bradley, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), both of which allowed Ex parte Young actions for injunctive relief against what were considered to be the current, ongoing consequences of past violations.
 
 
 21
 Reliance on those decisions is misplaced; the situations presented in those cases are not analogous in critical respects to those presented by Paraguay's action. In Papasan, the action sought injunctive relief to compel equalizing funding of a school district which had been and continued to be under-funded in relation to other districts of the state as a result of the State's unconstitutional sale 100 years earlier of property held in trust for the district's support. In Milliken, the action sought injunctive relief to compel state officials to fund a remedial education plan in order to eradicate the demonstrably continuing effects of a long-maintained state policy of racial segregation in a public school system.
 
 
 22
 Both of those cases involve classic examples of presently experienced harmful consequences of past conduct, hence of ongoing violations of federally protected constitutional rights. As the district court put it, the state-official defendants in Milliken "were in violation of federal law at the precise moment when the case was filed." See 949 F.Supp. at 1273. Here, by contrast, again as the district court indicated, Paraguay's claim was not, as it could not be, that Commonwealth officials were continuing to prevent Paraguay, either by action or non-action, from providing aid and counseling to Breard at the time Paraguay filed its action. See id.
 
 
 23
 For the same reason, Paraguay's reliance on this court's decisions in Coakley v. Welch, 877 F.2d 304 (4th Cir.1989), and Thomas S. by Brooks v. Flaherty, 902 F.2d 250 (4th Cir.1990), is misplaced. Coakley held that a state employee unconstitutionally discharged from his employment suffers a "continuing violation" of that property right that could be remedied by a federal injunctive decree requiring his reinstatement. Thomas S. held that persons subjected to unconstitutional treatment when formerly in state mental institutions suffered continuing violations of those constitutional rights after their release that could be remedied by a federal injunctive decree for their care. Again, those cases concerned classic claims of ongoing violations of federally-protected property and liberty rights. As in Milliken and Papasan, at the time that those actions were filed, responsible state officials were presently violating the claimants' ongoing rights.
 
 
 24
 Nor is the relief sought by Paraguay for the treaty violations in any true sense "prospective." Paraguay bases its prospective-relief contention on the fact that the relief sought is formally couched in injunctive, declarative terms and on the basis, as if it were dispositive of the question, that no monetary damages are sought. But when the essence is considered, the only presently effective relief sought for the violations claimed and conceded is quintessentially retrospective: the voiding of a final state conviction and sentence. That this could be effectuated in an injunctive or declaratory decree directed at state officials does not alter the inescapable fact that its effect would be to undo accomplished state action and not to provide prospective relief against the continuation of the past violation. Money damages are probably the purest and most recognizable form of retrospective relief, but surely not the only form, and the fact that that remedy is not sought whereas an injunctive or declarative form is, does not automatically establish that the Ex parte Young exception allows the action to proceed. Cf. Idaho v. Coeur d'Alene Tribe of Idaho, --- U.S. ----, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (holding that Indian Tribe's action to enjoin state officials from continuing to exercise jurisdiction over lands claimed by Tribe, being "functional equivalent" of quiet title action against state, was barred by Eleventh Amendment notwithstanding claimed violation was continuing and the relief sought was only prospective in form).
 
 III
 
 25
 We share the district court's expressed "disenchantment" with the Commonwealth's conceded past violation of Paraguay's treaty rights. See 949 F.Supp. at 1273. There are disturbing implications in that conduct for larger interests of the United States and its citizens.[7] But, we conclude that because the violation of federal treaty law was not ongoing when this action was filed, nor the relief sought prospective, the Eleventh Amendment does not permit the federal courts to provide a remedy against the Commonwealth officials sued in this action for their conceded past violations. See United Mexican States v. Woods, 126 F.3d 1220, 1223 (9th Cir.1997) (holding to same effect in affirming dismissal on Eleventh Amendment immunity grounds of comparable action by Mexico and Mexican officials against Arizona officials).
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 The district court's dismissal of Breard's petition was affirmed by this court in an opinion filed contemporaneously with that in this case. See Breard v. Pruett, 134 F.3d 615 (4th Cir.1998)
 
 
 [2]
 The other treaty invoked is the Treaty of Friendship, Commerce, and Navigation ("Friendship Treaty") that was signed by the United States and Paraguay in 1859. Article XII of that Treaty provides that "the diplomatic agents and consuls of the Republic of Paraguay in the United States of America shall enjoy whatever privileges, exemptions, and immunities are or may be there granted to agents of any other nation whatever." Treaty of Friendship, Commerce, and Navigation, Feb. 4, 1859, U.S.-Para., art. XII, 12 Stat. 1091. By later consular conventions the United States entered into agreements with the United Kingdom, among other nations, under which "[a] consular officer shall be informed immediately by the appropriate authorities of the territory when any national of the sending state is confined in prison awaiting trial or is otherwise detained in custody within his district." Consular Convention, June 6, 1951, U.S.-U.K., art. 16, 3 U.S.T. 3426. See also Consular Convention, June 1, 1964, U.S.-U.S.S.R., art. 12, 19 U.S.T. 5018 ("The appropriate authorities of the receiving state shall immediately inform a consular officer of the sending state about the arrest or detention in other form of a national of the sending state."). Paraguay invokes this agreement with "any other" nation as entitling it to the same notification respecting confinement or custody of its nationals as was provided for the "other" nation
 
 
 [3]
 The United States filed a brief and participated as amicus curiae in support of this position
 
 
 [4]
 We do not, therefore, address the Rooker-Feldman basis for the district court's dismissal, nor do we consider the "political-question" issue first raised on this appeal. Though both are important issues, they are better reserved for cases in which their resolution is critical to decision
 
 
 [5]
 The district court did not address, except to recognize it, the "prospective relief" issue; the Commonwealth has raised it both below and here
 
 
 [6]
 Which is an action against a state official, the prison warden, that itself is maintainable in federal court only by virtue of the Ex parte Young exception, as specifically implemented by 28 U.S.C. § 2254. See Seminole Tribe, 517 U.S. at 177-79, 116 S.Ct. at 1182 (Souter, J., dissenting) (noting the point)
 
 
 [7]
 Made even more disturbing by the fact that this is not the only revealed violation. See Murphy v. Netherland, 116 F.3d 97, 99-100 (4th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 26, 138 L.Ed.2d 1050 (1997). The larger interests threatened are admirably pointed out by Senior Judge Butzner, specially concurring in Breard v. Pruett, 134 F.3d 615, 621 (4th Cir.1998)