UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

INTERNATIONAL COALITION FOR
RELIGIOUS FREEDOM; ALEX COLVIN;
HANALYN COLVIN; DAN FEFFERMAN;
SUSAN FEFFERMAN; MICHAEL
ROSCHUNI; LLOYD EBY,
                    *Plaintiffs-Appellants,*

and

NICHOLAS MILLER, President of the
Council on Religious Freedom,
                                    *Plaintiff,*

v.

THE STATE OF MARYLAND; BOARD OF
REGENTS OF THE UNIVERSITY OF
MARYLAND SYSTEM; PARRIS
GLENDENING; WILLIAM WOOD,
                    *Defendants-Appellees.*

No. 00-1541

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge.
(CA-99-2490-L)

Argued: December 6, 2000

Decided: February 7, 2001

Before WILKINS and LUTTIG, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** David B. Goldstein, RABINOWITZ, BOUDIN, STANDARD, KRINSKY & LIEBERMAN, P.C., New York, New York, for Appellants. Mark Jason Davis, Assistant Attorney General, Baltimore, Maryland, for Appellees. **ON BRIEF:** Eric M. Lieberman, RABINOWITZ, BOUDIN, STANDARD, KRINSKY & LIEBERMAN, P.C., New York, New York; Kendrick Moxon, MOXON & KOBRIN, Los Angeles, California, for Appellants. J. Joseph Curran, Jr., Attorney General of Maryland, Andrew H. Baida, Assistant Attorney General, Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

The Maryland General Assembly created, through House Joint Resolution 22 ("HJR 22"), and the Governor appointed, a Task Force to Study the Effects of Cult Activities on Public Senior Higher Education Institutions ("Task Force"). Appellants, the International Coalition for Religious Freedom, its president, and six individuals who are members of the Unification Church, instituted an action for injunctive and declaratory relief, arguing that HJR 22 and the Task Force's activities violated their First Amendment rights.

After the action was filed, the Task Force completed its study, prepared and published its Report, and ceased operations, whereupon appellees, the State of Maryland and its officers, moved to dismiss appellants' complaint because the conduct alleged therein was no longer ongoing and the relief sought by appellants constituted retroactive relief barred by the Eleventh Amendment. We agree with the district court that appellants' request for injunctive relief was mooted by issuance of the Task Force's Report and that a declaratory judgment

would not serve a useful purpose. Moreover, we also conclude that granting declaratory relief in this case would violate the Eleventh Amendment. Accordingly, we affirm the judgment of the district court dismissing appellants' complaint.

I.

The Maryland General Assembly passed HJR 22, creating the Task Force on May 21, 1998. HJR 22 concluded that "the State of Maryland has a right and a responsibility to examine the behaviors of members of any group who violate State or local law or campus policies regarding deception, harassment, or fraud, or who threaten the mental, emotional, or physical well-being" of Maryland's citizens or students enrolled in its colleges. HJR 22 mentioned no particular cult, religious beliefs, or religious practices.

HJR 22 directed the Task Force to,

> [c]ommunicate with and obtain information from cult awareness organizations, former cult members, college administrators . . . and other interested parties regarding the recruitment and organizational practices of cults, the extent of cult activities . . . the response of college administrators in Maryland and around the nation to cult activities, and the effect of cult involvement on students.

J.A. 37. The Task Force was directed to submit its findings and recommendations to the Governor and the General Assembly no later than September 30, 1999. The Task Force had no authority to implement its recommendations.

Though HJR 22 was passed in May 1998 and the Task Force held public meetings between May 25, 1999 and September 15, 1999, appellants waited until August 16, 1999, shortly before issuance of the Task Force's Report, to file a complaint. In their complaint, appellants alleged, *inter alia*, that both HJR 22 and the Task Force violated the Establishment and Free Exercise clauses of the First Amendment. The relief asked for, in toto, was: (1) a declaration that HJR 22 was facially unconstitutional and void; (2) a declaration that the conduct

of the Task Force was unconstitutional; (3) preliminary and permanent injunctions against implementation of HJR 22; (4) preliminary and permanent injunctions prohibiting appellees from issuing any "report" or "finding" in the name of the Task Force; and (5) reasonable costs and fees arising out of the action.[1]

On September 7, 1999, appellees filed a motion under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim. Appellants then filed an application in district court for a temporary restraining order ("TRO") on September 13, 1999, seeking to prevent the Task Force from issuing its Report. The district court denied the application for a TRO, and this court denied appellants' petition for a writ of mandamus. J.A. 27-28.

The Task Force's Report was publicly released on September 17, 1999,[2] and, as appellants acknowledge, did not identify any specific religion, cult, or group by name or mention religion or religious practices. Following release of the Report, appellees moved to dismiss appellants' complaint because of mootness, lack of standing, and the Eleventh Amendment, arguing that issuance of the Report completed the Task Force's work. It is undisputed that neither HJR 22 nor the Task Force are currently in operation; the sole purpose of HJR 22 was to create the Task Force, and the sole function of the Task Force was to conduct the requested study and issue its Report.

The district court granted appellees' motion to dismiss on the grounds that appellants' request for injunctive relief was mooted once the Task Force ceased operations. The district court also declined to grant a declaratory judgment regarding the propriety of past governmental conduct. This appeal followed.

---

[1]Appellants recognized in the district court that their claims for monetary relief were barred by the Eleventh Amendment. J.A. 30.

[2]The Task Force agreed at its September 15, 1999, meeting that its work was concluded and unanimously voted to forward its Report and Executive Summary to the persons and offices mandated by HJR 22. J.A. 162.

II.

From its inception, appellants' suit against appellees sought to prevent implementation of HJR 22 — though the Task Force had begun operations pursuant to HJR 22 months prior to appellants filing their complaint — and to suspend the operations of the Task Force, particularly issuance of its Report. Now, after the Task Force has ceased operations, and after the Task Force's Report has been published, appellants seek relief in this court, though the actions it sought to prevent have been completed.

Appellants do not claim that they are entitled to injunctive relief. And, indeed, under the facts alleged in the complaint — aimed as it was at the constitutionality of HJR 22 and cessation of the Task Force's activities with the goal of preventing publication of the Task Force Report — injunctive relief was rendered nugatory by issuance of the Report.

We thus agree with appellants that their claims for injunctive relief are moot, and decline to address them. It is well settled that federal courts have no authority to "give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of California* v. *United States*, 506 U.S. 9, 12 (1992) (citing *Mills* v. *Green*, 159 U.S. 651, 653 (1895)). This is so even though such case presented a justiciable controversy at an earlier point in time and an intervening event rendered the controversy moot. *Calderon* v. *Moore*, 518 U.S. 149, 150 (1996).

Although they agree that their claims for injunctive relief are mooted, appellants nonetheless insist that their *case* is not moot because they suffer ongoing harms from the Task Force and issuance of the Task Force's Report. Thus, they explain, though issuance of the Task Force Report mooted their claims for injunctive relief, it did not moot their claims for declaratory relief, which would be "an effectual, albeit partial, remedy for the State of Maryland's unconstitutional activities and the ongoing stigma placed upon [them]." Appellants' Brief at 36. This argument is specious, and fails for a variety of reasons.

We begin by placing appellants' claim — that the availability of declaratory relief saves their case from mootness — in perspective. For, not long ago, appellants themselves believed that publication of the Task Force's Report mooted their case. Indeed, appellants espoused this view in their September 16, 1999, petition for a writ of mandamus, which sought to prevent appellees' public issuance of the Task Force's Report. In that petition, appellants argued that failure to enjoin publication of the Task Force's Report would, "effectively moot[ ] this action."[3] Appellants' Petition for Writ of Mandamus at 38. We agree with the candid assessment expressed by appellants at that earlier point in the course of this litigation.

However, we need not rely on appellants' earlier concession because it is well settled that, under the circumstances present in this case, a declaratory judgment would constitute retrospective relief and is therefore barred by the Eleventh Amendment. *See Green* v. *Mansour*, 474 U.S. 64, 71-74 (1982) (Eleventh Amendment bars the federal courts from issuing declaratory judgments where the state is no longer violating federal law); *Manning* v. *South Carolina Dept. of Hwy. and Pub. Trans.*, 914 F.2d 44, 48 (4th Cir. 1990) (same). Thus, where, as here, the parties' status implicates the Eleventh Amendment a declaratory judgment — as much as injunctive relief — requires an ongoing constitutional violation for which prospective relief is available.[4] We are thus certain that a declaratory judgment that the state violated — or did not violate — the law in the past cannot stand on its own, and would be voided by the Eleventh Amendment, even if it were useful to the parties in some sense.

This is so because the limited exception to Eleventh Amendment immunity created by *Ex parte Young*, 209 U.S. 123 (1908), provides *only* for prospective injunctive relief from a continuing violation of federal law, and not for declaratory relief for a past violation of fed-

---

[3]And, "this action," contrary to appellants' current assertion, clearly referenced the case, and not the motion for a TRO.

[4]Appellants do not suggest in their brief that any of the Task Force's recommendations have been implemented to date. Neither did they amend their complaint to either (1) claim that the Task Force's Report and recommendations were unconstitutional or (2) seek to enjoin implementation of any such recommendations.

eral law. *Green*, 474 U.S. at 68. *See also Lynn* v. *West*, 134 F.3d 582, 588 (4th Cir. 1999) (relief from the constitutional violation in *Ex parte Young* was prospective only); *Booth* v. *Maryland*, 112 F.3d 139, 142 (4th Cir. 1997) (requirement of ongoing violation sets a minimum threshold for abrogation of state's sovereign immunity). Of course prospective relief, designed to end a continuing violation of federal law by state officials, is "necessary to vindicate the federal interest in assuring supremacy of that law," yet neither "compensatory [n]or deterrence interests are [ ]sufficient to overcome the dictates of the Eleventh Amendment," because the Court has "refused to extend the reasoning of *Young* . . . to [such] claims for retrospective relief." *Green*, 474 U.S. at 68.

Thus, while appellants seek to conflate the issue of mootness with the availability of a declaratory judgment, we reject this effort out of hand. *Green* stands for the clear proposition that because the Eleventh Amendment would prohibit the award of money damages or restitution if that dispute were resolved against the State, no federal court may issue a declaratory judgment on past state action, where the action complained of is past and no other relief [i.e., injunctive relief] is available. *Id.* at 74. As the Supreme Court explained:

> The award of a declaratory judgment in this situation would be useful in resolving the dispute over the past lawfulness of respondent's action only if it might be offered in state-court proceedings as res judicata on the issue of liability . . . but the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment.

*Id.* at 73.

Here, there is no ongoing violation of federal law, no occasion to issue an injunction because the state action is past and an injunction would serve no purpose, and no threat that HJR 22 or the Task Force will resume operational status: What remains is simply "a dispute about the lawfulness of [appellees'] past actions." *Id.* at 73. Contrary to appellants' position then, where the defendant is a sovereign state

and the constitutional violation is past, one cannot cure "mootness" by claiming that a case is susceptible to relief in the form of a declaratory judgment.

Nor do the cases relied upon by appellants support a contrary position as, in each such case, the plaintiff in fact received prospective injunctive relief to remedy ongoing constitutional violations. *See Papasan* v. *Allain*, 478 U.S. 265, 282 (1986) (injunctive relief to compel equalizing funding of a school district which had been and continued to be underfunded as a result of past unconstitutional action by the State to remedy continuing equal protection violation); *Milliken* v. *Bradley*, 433 U.S. 267, 289 (1977) (injunctive relief to compel state funding of a remedial education plan to require state officials, held responsible for the unconstitutional conduct, to eliminate ongoing de jure system). Appellants' request for declaratory judgment is simply not of a piece with *Papasan* or *Milliken*.

Appellants' reliance on *Church of Scientology of California* v. *United States*, 506 U.S. 9 (1992), for the proposition that declaratory relief is available here, is similarly misplaced. There, too, the Court suggested that prospective relief was available: The continued unlawful possession of the taxpayer's papers was an ongoing intrusion into an area subject to constitutional protection that was itself susceptible to remedy, and a partial remedy for an invasion of privacy in violation of the Fourth Amendment could be effected by ordering that the papers be destroyed or returned. *Id*. at 13. Further, since the United States was the other party, the Eleventh Amendment was not implicated.[5]

Though precedent thus makes clear that appellants must encompass within their claim both an ongoing constitutional violation *and* truly prospective relief in order to have recourse against state officials

---

[5]Of course, if appellants had alleged in their complaint that the Task Force Report and recommendations were unconstitutional, the analytic framework for appellants' comparison to *Church of Scientology* would be different. Yet, contrary to appellants' suggestion that the district court was obligated to grant leave for them to amend their complaint, at no time prior to the district court's dismissal of the case did appellants move to amend their complaint.

under *Ex parte Young*, appellants fail to meet these requirements. *Republic of Paraguay* v. *Allen*, 134 F.3d 622, 628 (1998). For example, while appellants claim that the stigma associated with, and stemming from, the Task Force itself constitutes a "continuing constitutional violation" redressable by prospective relief, they at best assert in support of that claim the present consequences of *past actions*.

For it is apparent that appellants' complaint does not allege that the Task Force's Report or recommendations violate the First Amendment — indeed, the Report was not yet published at the time the complaint was filed — nor does it detail ongoing harms suffered after issuance of the Report and cessation of Task Force activities. Rather, the complaint is addressed solely to the present harms allegedly visited upon appellants by passage of HJR 22 and operation of the Task Force. We will not consider claims not included in appellants' complaint nor can we simply overlook appellants' failure to enumerate in its complaint any *present action* or *current putative constitutional violation* by the appellees.[6]

Moreover, the claim for prospective relief is itself a chimera: "when the essence is considered, the only presently effective relief sought for the violations claimed [ ] is quintessentially retrospective: the voiding [of a Resolution and Report]." *Id*. That "this could be effectuated in an injunction or declaratory decree directed at state officials does not alter the inescapable fact that its effect would be to undo accomplished state action and *not* to provide prospective relief against the *continuation* of the past violation." *Id*. (emphases added).

Further, de novo review of the district court's disposition of appellants' claim for declaratory relief allows us to affirm its dismissal of

---

[6]The district court was under no obligation to consider claims not raised in the complaint when ruling on appellees' motion to dismiss for mootness, lack of standing, and the Eleventh Amendment. We may not, even were we so inclined, bypass basic procedural rules to address on appeal claims for relief not pled in a complaint, let alone properly presented for consideration by the district court. *See*, *e.g.*, *Karpel* v. *Inova Health Sys. Svcs.*, 134 F.3d 1222, 1227 (4th Cir. 1998) (issues raised for the first time on appeal will generally not be considered) (citing cases).

that request on an alternative ground as well. For the Declaratory Judgment Act ("the Act"), 28 U.S.C. § 2201, provides that district courts "may declare" the rights of interested parties, and *permits* a "federal court to declare the rights of a party whether or not further relief is or could be sought." *Green*, 474 U.S. at 72; *see also United Capitol Ins. Co.* v. *Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998).

That decision is a discretionary one, and of paramount importance in the decision to exercise such discretionary authority is whether "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . [whether] it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id*. (internal citations and quotation marks omitted). Additionally, in this circuit, it is well settled that other considerations, such as federalism, efficiency, and comity, should also inform the district court's decision. *See Aetna Casualty & Surety Co.* v. *Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (per curiam).

The district court concluded that a declaratory judgment would neither be useful in this case nor afford meaningful relief to the parties. It further recognized the federalism concerns inherent in an advisory opinion on the past actions of Maryland's executive and legislative branches. We too conclude that a declaratory judgment in this case would not be useful to the parties and that it would be unable to avert issues of federalism because it "would, in effect, be no more than an abstract judicial pronouncement [by a federal court] that Maryland's General Assembly and Governor acted lawfully or unlawfully." J.A. 31.[7] We affirm the district court's dismissal of appellants' request for declaratory relief for these reasons also.

---

[7]We do not consider the question of standing, having reached our decision on other grounds, and we reject appellants' suggestion that by acknowledging publication of the Task Force's Report — a matter of public record — the district court was thereby required to treat the motion to dismiss as one for summary judgment or somehow to intuit that appellants needed or wanted to amend their complaint. *See*, *e.g.*, *McNair* v. *LendLease Trucks, Inc.*, 62 F.3d 651 (4th Cir. 1995) (considering facts of which a judge may properly take judicial notice in considering 12(b)(6) motion; no conversion); *Cinel* v. *Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.), *cert. denied*, 513 U.S. 868 (1994) (a court may permissibly refer to matters of public record in deciding a 12(b)(6) motion to dismiss).

## *CONCLUSION*

For all of the reasons stated herein, we affirm the judgment of the district court.

*AFFIRMED*