**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1420**

JOSEPH JEMSEK, M.D.,

　　　　　Plaintiff – Appellant,

　　v.

JANELLE R. RHYNE, M.D.; ROBERT MOFFATT, M.D.; H. ARTHUR
MCCULLOCH, M.D.; ALOISIUS P. WALSH; E. K. FRETWEEL, M.D.;
MICHAEL E. NORINS, M.D.; GEORGE L. SAUNDERS, M.D.;
SARVARESH SATHIRAJU, M.D.; DICKY S. WALIA; RALPH LOOMIS,
M.D.; DON JABLONSKI, M.D.; PAUL S. CAMNITZ, MD, M.D.;
CHERYL WALKER-MCGILL, M.D.; PASCAL UDEKWU, M.D.; HELEN
DIANE MEELHEIM, FNP-BC; SUBHASH GUMBER, M.D., Ph.D.;
TIMOTHY E. LIETZ, M.D.; DEBRE A. BOLICK, M.D.; ELANOR E.
GREENE, M.D.; A. WAYNE HOLLOMAN; THELMA C. LENNON; MICHAEL
J. ARNOLD, M.B.A.; BARBARA E. WALKER, D.O.,

　　　　　Defendants – Appellees,

　　　　and

STATE OF NORTH CAROLINA; NORTH CAROLINA MEDICAL BOARD,

　　　　　Defendants.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.　Terrence W. Boyle,
District Judge. (5:14-cv-00504-B0)

Argued: September 22, 2016　　　　Decided: October 13, 2016

Before WILKINSON, DUNCAN, and WYNN, Circuit Judges.

Affirmed by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Wilkinson and Judge Wynn joined.

---

**ARGUED:** Jacques G. Simon, JACQUES G. SIMON ATTORNEY AT LAW, Merrick, New York, for Appellant. Stephen Daniel Feldman, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Matthew W. Sawchak, Steven A. Scoggan, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellees Moffatt, McCulloch, Walsh, Fretwell, Norins, Saunders, Sathiraju, Loomis, Jablonski, Camnitz, Walker-McGill, Udekwu, Meelheim, Gumber, Lietz, Bolick, Greene, Walker, Holloman, Lennon, and Arnold. Andrew H. Erteschik, POYNER SPRUILL LLP, Raleigh, North Carolina, for Appellee Rhyne. Ronald H. Garber, BOXLEY, BOLTON, GARBER & HAYWOOD, L.L.P., Raleigh, North Carolina, for Appellee Walia.

---

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Dr. Joseph Jemsek filed suit seeking declaratory and injunctive relief against the State of North Carolina, the North Carolina Medical Board ("NCMB" or "Board"), and former and current Board members, alleging that a conflict of interest infected Board disciplinary proceedings that sanctioned Jemsek, thereby violating his Fourteenth Amendment right to procedural due process. The district court dismissed Jemsek's complaint because he lacked standing to sue the former Board members and Defendants were otherwise immune from suit under the Eleventh Amendment. Jemsek appealed the district court's dismissal. Finding no error, we affirm.

I.

A.

Jemsek is a licensed physician who previously practiced medicine in North Carolina.[1] Since opening his practice in 1979, Jemsek focused on infectious disease. In 2001, he began treating individuals with chronic Lyme disease by prescribing antibiotics long-term, although this course of treatment did not comport with the model prescribed by the Infectious Disease Society of America.

---

[1] We draw all facts from Jemsek's complaint.

Jemsek submitted claims to Blue Cross Blue Shield of North Carolina ("BCBSNC") on behalf of insured patients for care that included long-term antibiotic treatment. Although BCBSNC initially accepted Jemsek's claims, in 2003, it began to examine more closely those claims that included long-term antibiotic use. In 2005, BCBSNC stopped accepting such claims altogether. In 2005, BCBSNC insureds treated by Dr. Jemsek also filed several complaints with the NCMB concerning his use of long-term antibiotic treatments.

The Board investigated Jemsek, formally charged him with professional misconduct, conducted disciplinary hearings, and ultimately sanctioned him. In an order dated August 21, 2006 ("2006 order"), the Board suspended Jemsek's medical license for one year but stayed the suspension provided that (1) Jemsek develop an informed consent form approved by the Board, (2) if Jemsek's diagnosis of patients was not supported by Center for Disease Control criteria, then those patients must receive a consultation or second opinion before Jemsek could treat them, (3) Jemsek's treatment of Lyme disease with long-term antibiotics be included in a formal research protocol with institutional review board supervision, and (4) any complications of treatment be addressed immediately.

In 2008, the Board launched another investigation into Jemsek's treatment of patients with chronic Lyme disease through

4

the use of hyperbaric chambers.  During this investigation, NCMB investigators informed Jemsek that, if he allowed his North Carolina medical license to become inactive, the Board would end the investigation.  Jemsek agreed, and the investigation ended with the Board issuing a public letter of concern dated June 23, 2008 ("2008 letter").  Dr. Janelle A. Rhyne, then-president of the Board, signed the 2008 letter.

B.

In 2012, Jemsek began a campaign of unsuccessful litigation before the Board and in state court seeking a declaration that the 2006 order was null, void, and illegal.[2]  Jemsek first petitioned the Board to revoke the 2006 order on April 27, 2012. After the Board denied his request for a declaratory ruling, Jemsek sought judicial review of the Board's final order in North Carolina state court pursuant to the state's statutory-review scheme.  The North Carolina Superior Court dismissed Jemsek's petition with prejudice by order dated January 16, 2013.  The North Carolina Court of Appeals affirmed on May 20, 2014.; In re Jemsek, 234 N.C. App. 115, 761 S.E.2d 755 (2014). On June 4, 2014, Jemsek filed a petition for discretionary review with the Supreme Court of North Carolina.

---

[2] Although Jemsek mentioned due process violations during the state litigation, he did not base his claims on the allegations presented to us.  It does not appear that Jemsek challenged the 2008 letter in the state litigation.

5

During June of 2014, while his petition for discretionary review was pending, Jemsek learned that Rhyne may have had a conflict of interest when she participated in the disciplinary process that led up to the 2006 order and the 2008 letter. Rhyne was, at the same time, a paid consultant to BCBSNC. Jemsek did not bring this fact to the attention of the Supreme Court of North Carolina through a procedural mechanism available to him.

C.

With his petition for discretionary review still pending in state court, on September 9, 2014, Jemsek filed the instant suit in federal district court against the State of North Carolina, the Board, and former and current Board members in their official and individual capacities (collectively, "Defendants"). The complaint alleged that bias infected the state medical license disciplinary proceedings in violation of his due process right to an impartial tribunal. Jemsek sought declaratory relief under 28 U.S.C. § 2201 that the 2006 order and 2008 letter were unconstitutional and an injunction under 42 U.S.C. § 1983 rescinding them. In October and November of 2014, Defendants moved to dismiss Jemsek's federal complaint.

On December 18, 2014, the Supreme Court of North Carolina denied Jemsek's petition for discretionary review, thus ending

6

the state court litigation.  In re Jemsek, 367 N.C. 789, 766 S.E.2d 623 (2014).

Subsequently, on March 20, 2015, the district court granted the Defendants' motions to dismiss in the instant suit.  The district court found that Jemsek lacked standing to sue the former Board members because they could not redress his injuries; they had no authority to comply with an injunction to rescind a Board order and a declaratory judgment would have no legal effect as to these individuals.  The district court also found that the Eleventh Amendment otherwise barred Jemsek's claims because Jemsek alleged past violations of his due process rights and did not seek prospective relief.  Jemsek timely appealed on April 16, 2015.

D.

Jemsek's arguments have narrowed on appeal.  Jemsek now concedes that the Eleventh Amendment bars his claims against the State of North Carolina and the NCMB, and he has abandoned those claims.  Appellant's Br. at 9; ECF Nos. 22, 25.

It appears that Jemsek has also abandoned his claims against current and former Board members in their individual capacities.  He clarifies in his opening brief that he is only suing former Board members in their official capacities.  Appellant's Br. at 44–45.  As for current Board members, Jemsek only states that he seeks injunctive relief against them in

7

their official capacities. Id. at 46. It could not be otherwise. Any effort to seek declaratory relief from the current Board members in their individual capacities would fail to state a claim because such a declaration would have no legal effect on those individuals. We therefore agree with the district court's conclusion that Jemsek withdrew any individual capacity claims, and proceed to address his arguments involving current and former Board members in their official capacities.

## II.

The issues of standing and Eleventh Amendment immunity, including the Ex parte Young exception, raise questions of law that we review de novo. See Cooksey v. Futrell, 721 F.3d 226, 234 (4th Cir. 2013) (lack of standing); Hutto v. S.C. Ret. Sys., 773 F.3d 536, 542 (4th Cir. 2014) (Eleventh Amendment immunity); CSX Transp., Inc. v. Bd. of Pub. Works of State of W. Va., 138 F.3d 537, 541 (4th Cir. 1998) (Ex parte Young exception).[3]

## A.

As we explain below, we conclude that the district court correctly dismissed Jemsek's claims for injunctive and

_____

[3] Defendants argued below that the district court should abstain under Younger v. Harris, 401 U.S. 37 (1971). The district court did not address this argument. Because we affirm on the alternative, dispositive grounds of Article III standing and Eleventh Amendment immunity, we need not address this issue.

declaratory relief against the former Board members for lack of standing.

For Article III standing, "[t]he party invoking federal jurisdiction bears the burden of establishing" (1) injury in fact, (2) causation, and (3) redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). For an injury to satisfy the redressability prong, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 38 (1976)). We have held that "[b]y itself, a declaratory judgment cannot be the redress that satisfies the third standing prong. Rather, plaintiffs must identify some further concrete relief that will likely result from the declaratory judgment." Comite de Apoyo a los Trabajadores Agricolas (CATA) v. U.S. Dep't of Labor, 995 F.2d 510, 513 (4th Cir. 1993).

Here, whatever authority the former Board members had at the time of the 2006 order and the 2008 letter, they have none now. Jemsek acknowledges that injunctive relief cannot be enforced against the former Board members. Appellant's Br. at 38, 45–46. Having identified no other relief besides a declaratory judgment that the former Board members can provide, Jemsek thus effectively concedes that he lacks standing to sue them.

9

B.

The district court also correctly concluded that Jemsek's claims do not fit within the Ex parte Young exception to the Eleventh Amendment.

The Eleventh Amendment bars suits in federal court by citizens against unconsenting states and state agencies.[4] See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Eleventh Amendment immunity extends to state officers sued in their official capacities. See id. at 101–02. "This jurisdictional bar applies regardless of the nature of the relief sought." Id. at 100.

The doctrine of Ex parte Young, 209 U.S. 123 (1908), provides a "critical exception" to Eleventh Amendment immunity: "[F]ederal courts may exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." Republic of

_____

[4] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Despite these express terms, the Supreme Court has interpreted this amendment also to preclude citizens from bringing suits in federal court against their own states. Hans v. Louisiana, 134 U.S. 1, 13 (1890).

10

Paraguay v. Allen, 134 F.3d 622, 627 (4th Cir. 1998). The theory behind this exception is that a state cannot authorize its officers to violate federal law, so those officers are stripped of sovereign immunity: thus, "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law." Id. (quoting Quern v. Jordan, 440 U.S. 332, 337 (1979)). "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 296 (1997)). "[T]he exception is narrow: It applies only to prospective relief, [and it] does not permit judgments against state officers declaring that they violated federal law in the past . . . ." P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). "[C]onjecture regarding discrete future events" does not suffice to create an ongoing violation. DeBauche v. Trani, 191 F.3d 499, 505 (4th Cir. 1999).

Jemsek argues that because the 2006 order and 2008 letter remain on the record, there is an ongoing violation such that a

11

declaratory judgment voiding those documents, and an injunction rescinding them, would qualify as prospective relief. This contention fails under our established precedent.

In Paraguay, this court held that the Eleventh Amendment barred a claim based on a treaty violation because the plaintiff, the Republic of Paraguay, sought, through an injunction and declaratory judgment, "the voiding of a final state conviction and sentence" for one of its citizens. 134 F.3d at 628. Paraguay complained that state officials violated federal law by failing to inform a Paraguayan citizen convicted of a capital offense of his consular rights under a treaty and to notify Paraguayan officials of that person's arrest, conviction, and sentence. We found that even though Paraguay couched its request for relief in terms of a declaratory judgment and injunction, this "d[id] not alter the inescapable fact that its effect would be to undo accomplished state action." Id. The same is true here.

Jemsek asserts that the continued existence and "publication" of the 2006 order and 2008 letter amount to an ongoing constitutional violation. See Appellant's Br. at 23, 25. But the 2006 order would only have suspended his license for one year, even if the Board had not immediately stayed it. Meanwhile, the 2008 letter was a one-time reprimand, and Jemsek voluntarily allowed his medical license to become inactive.

12

That these disciplinary actions may have continuing consequences (although, as we note below, Jemsek fails to concretely identify them) is unfortunate from his perspective. But, like the conviction at issue in Paraguay, even though the consequences of any past violation may persist, invoking those effects does not transform past state action into an ongoing violation. Rather, it is an attempt "to avoid the obvious fact that the actual violation alleged is a past event that is not itself continuing." 134 F.3d at 628.

Regardless of whether the allegations are true, the Board is not continuing to violate Jemsek's rights. Jemsek admitted at oral argument he has not sought reinstatement of his North Carolina medical license as the Board's rules allow. 21 N.C. Admin. Code 32B.1350. Jemsek has not plausibly alleged that the Board is "continuing to prevent [him], either by action or non-action, from" seeking to resume his medical practice in the state. Paraguay, 134 F.3d at 628. To the extent that Jemsek suggests that the Board may subject him to discipline if he returns to the state, see Appellant's Br. at 4, 37, "[m]ere conjecture is insufficient to transform a one-time event into a continuing governmental practice or an ongoing violation." DeBauche, 191 F.3d at 505. The disciplinary actions were one-

time events, and the alleged due process violations occurred "entirely in the past."  Id.[5]

The Supreme Court has acknowledged that "the difference between the type of relief barred by the Eleventh Amendment and that permitted under Ex parte Young will not in many instances be that between day and night."  Edelman v. Jordan, 415 U.S. 651, 667 (1974).  But a "straightforward inquiry" reveals that Jemsek's claims are purely historical, not ongoing violations. Verizon Md., 535 U.S. at 645.  Accordingly, we hold that the Eleventh Amendment bars his claims.

Finally, we note that this is not a case in which allegations of constitutional violations might escape judicial review entirely.  Jemsek claims he discovered Rhyne's alleged

---

[5] Jemsek's case differs from one in which this court has found that termination of an employee counts as an "ongoing violation" for Ex parte Young purposes.  In Coakley v. Welch, 877 F.2d 304 (4th Cir. 1989), the plaintiff sought the injunctive remedy of reinstatement.  In granting the relief, we reasoned that the alleged official conduct, "while no longer giving [the plaintiff] daily attention, continues to harm him by preventing him from obtaining the benefits of [state agency] employment."  Id. at 307.  Jemsek alleges no similar, current impact.  He seeks an injunction rescinding past state action-- the 2006 order and the 2008 letter--that does not circumscribe his current conduct.  The NCMB did not terminate his license; Jemsek allowed his North Carolina medical license to become inactive before the NCMB issued the 2008 letter.  The NCMB merely conducted investigations that led to a suspended disciplinary order and a one-time letter of reprimand.  Although Jemsek characterizes the documents as "license disciplinary restrictions," Appellant's Br. at 25, they did not revoke his license, nor do they prohibit him from seeking to resume his medical practice in North Carolina.

14

conflict of interest in June of 2014. At that time, his petition for discretionary review with the Supreme Court of North Carolina was still pending. Jemsek could have raised his current claims in the state court litigation pursuant to Rule 60(b)(6) of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. § 1A-1, Rule 60(b). North Carolina allows a state trial court to rule on a Rule 60(b) motion while an appeal is pending and, if it is denied, allows consideration of that claim on appeal as well. Hall v. Cohen, 628 S.E.2d 469, 471 (N.C. Ct. App. 2006). This court has recognized that North Carolina Rule of Civil Procedure 60(b), which is substantially similar to the federal rule, may provide an adequate remedy for redressing constitutional violations. See Leonard v. Hammond, 804 F.2d 838, 840 (4th Cir. 1986) (finding that habeas petitioner could have presented federal due process claim and sought relief in state court pursuant to Rule 60(b) and thus failed to exhaust state remedies).

Jemsek had an opportunity to raise his claims of unconstitutional bias in state court. He may apply for reinstatement with the Board. And if unsuccessful, he may seek redress of any unfavorable action in state court. "Under [our] system of dual sovereignty, we have consistently held that state courts . . . are . . . presumptively competent . . . to adjudicate claims" of federal right. Tafflin v. Levitt,

15

493 U.S. 455, 458 (1990).  The federal courts are not the proper forum for the claims Jemsek presents.

## III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

16